FIRST CHICAGO INSURANCE COMPANY, f/n/a Chicago Mutual Insurance Company, Plaintiff-Appellee, v. MICHAEL E. MOLDA *et al.*, Defendants-Appellants.

First District (6th Division)   No. 1—10—1138

Opinion filed March 29, 2011.

William Lazarus, of Law Office of William Lazarus, of Flossmoor, and Brian W. Coffman, of Coffman Law Offices, of Chicago, for appellants.

William H. Ransom, of Newman Raiz, LLC, of Chicago, for appellee.

JUSTICE ROBERT E. GORDON delivered the judgment of the court, with opinion.

Presiding Justice Garcia and Justice McBride concurred in the judgment and opinion.

## OPINION

This appeal arises from a declaratory judgment action filed by plaintiff First Chicago Insurance Company (First Chicago), seeking a

declaration that it had no duty to defend or indemnify defendant Michael Molda or his employer, Metrolift, Inc. (Metrolift)[1], in litigation concerning an automobile accident involving Molda and defendant Nola Wilson. The trial court granted First Chicago's motion for summary judgment, finding that First Chicago had not received timely notice of the accident as required by Metrolift's insurance policy. Defendants appeal, claiming that First Chicago had been given timely notice.[2] We reverse.

## BACKGROUND

On August 17, 2005, Molda and Wilson were involved in an automobile accident in which Molda, driving a motor vehicle westbound on Roosevelt Road in Broadview, collided with Wilson, driving eastbound on Roosevelt Road. At the time of the accident, Molda was on his way to visit a customer in his capacity as a territorial manager for Metrolift, a company that rented, sold, and repaired construction equipment. Molda was driving his personal automobile because Metrolift did not provide its territorial managers with company automobiles.[3] The automobile Molda was driving had only $20,000 in liability coverage.

Unbeknownst to Molda, as a Metrolift employee, he was also covered under Metrolift's insurance policy with First Chicago. First Chicago, formerly known as Chicago Mutual Insurance Company, had issued a policy including liability coverage for automobiles "owned by [Metrolift's] employees or members of their house-holds [sic]" that were being used for business purposes. Section IV(A)(2) of the insurance policy included notice conditions regarding Metrolift's duties in the event of an accident, claim, suit, or loss:

"a. In the event of 'accident', claim, 'suit' or 'loss', you must give us or our authorized representative prompt notice of the 'accident' or 'loss'. Include:

(1) How, when and where the 'accident' or 'loss' occurred;
(2) The 'insured's' name and address; and
(3) To the extent possible, the names and addresses of any injured persons and witnesses.

---

[1]Metrolift was initially named as a defendant in this case but was voluntarily dismissed after entering into an agreement to be bound by any final judgment entered in this matter.

[2]Molda did not file a separate brief in this appeal but adopted Wilson's brief.

[3]Molda's automobile was owned by Margo Clements, his mother, but the ownership of the vehicle does not affect Molda's coverage under the First Chicago policy.

b. Additionally, you and any other involved 'insured' must:
***

(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or 'suit'.

(3) Cooperate with us in the investigation, settlement or defense of the claim or 'suit'."

The term "you" in the insurance policy referred to Metrolift as the named insured; "authorized representative" was not defined.

Metrolift had purchased its insurance policy through Associated Specialty Insurance (Associated), a corporation doing business as an insurance producer. Associated's employee Mark Baskiewicz, a licensed insurance broker for 20 years, was Metrolift's primary contact with the company; on occasion, Metrolift also had contact with Ken South, Associated's president. When Metrolift first sought insurance coverage, Baskiewicz provided the company with a number of quotes from various insurance companies, and Metrolift selected the First Chicago policy; Baskiewicz did not recommend a specific insurer. South testified at his deposition that Associated did not have the right to underwrite First Chicago's policies and did not have the authority to bind its policies. He also testified that First Chicago did not provide Associated with any assistance in obtaining clients and that Metrolift is now insured through Safeco Insurance. South further testified that his company has a written producer's agreement with First Chicago which was not made part of the proceedings in this case.

The First Chicago policy included Associated's name, address, and telephone number listed as the producer. It did not provide any other contact information, nor was any individual or business other than Metrolift named anywhere within the policy. If a claim was to be made there was no reference to a phone number or person in his representative capacity to contact other than "our authorized representative." When Metrolift had an insurance need or question, Metrolift's treasurer, Stephen Harrison, contacted Baskiewicz. Harrison had a social as well as business relationship with Baskiewicz. Harrison testified at his deposition that he would normally call Baskiewicz immediately after an incident, and the two would discuss the situation and determine what action to take. If they determined that it was appropriate to file an insurance claim, Baskiewicz would contact the insurance company and obtain a claim number, and Harrison would then be contacted directly by a claim representative of the insurance company. Harrison further testified that he would complete a written narrative accident report of the incident, which he would send to Associated for its review and input, which often included documents

such as police reports and photographs. Associated would then forward the accident report to the claim department of the insurance company.

In the case of Molda's accident, Harrison and Metrolift president Rick Dahl became aware of the accident within two days of its occurrence. During that time, Harrison phoned Baskiewicz to discuss the accident. Harrison testified that during the phone call, he and Baskiewicz "discussed the nature of the incident" and developed a "game plan" as to "what [their] next step of action should be." They reached a "joint agreement" that they should "wait and see how the nature of it evolves," primarily whether Metrolift would be named in a lawsuit and whether Molda's personal insurance policy would provide sufficient coverage.

In a letter dated May 22, 2008, addressed to First Chicago, Harrison discussed the accident, writing:

> "I, Stephen J. Harrison corporate treasurer notified Mark Baskiewicz of the incident involving Nola Wilson and Michael Molda on or near the date of the incident (August 17, 2005[)].
>
> Notification was via phone conversation. This statement is verified and confirmed by Mark Baskiewicz on the attached letter dated May 21, 2008.
>
> This notification procedure is consistent with Metrolift's course of dealing with Associated Specialty Insurance, both before and since the Wilson/Molda accident. I would notify Mark Baskiewicz of all accidents, incidents, claims, or losses covered under the insurance coverage provided through his agency. As the insurance company's authorized representative, I would convey to him the proper information as known to me at the time.
>
> Metrolift, Inc. has never had any direct contact with Chicago Mutual with [sic] regarding application for coverage, underwriting of coverage, issuance and delivery of policies and notification of accidents, claims, suits or losses. Mark Baskiewicz was the authorized representative of Chicago Mutual for all these purposes. Thus all of our communications with Chicago Mutual went through him."

During his deposition, Baskiewicz had difficulty remembering but admitted that a customer told him that Steve Harrison and Rick Dahl said he was not doing his job correctly. Baskiewicz disputed the assertion that Harrison's actions were consistent with their course of dealings. Baskiewicz testified that each time that Harrison called to report a loss, an auto loss form would be completed either by Metrolift or by Baskiewicz; he also indicated that "[w]hen they report an accident, they send a police report, a detailed description of the accident to us, and we submit it to the carrier for claim processing." In the case of Molda's accident, Baskiewicz testified that Harrison never provided any documentation at the time of the accident. Normally, the documentation was sent to him "within days" of the accident.

Baskiewicz did not have any specific recollection of the telephone call reporting the accident, but believed that Harrison had called him because "Steve Harrison at Metrolift is very good in reporting claims." At some point, Baskiewicz did remember that the conversation did occur, but that no one from Metrolift "told us to turn the claim in" and did not recall specific details, other than that Metrolift had been in a small accident and was not at fault. He testified that at that time, Harrison had not instructed him to submit a claim. Baskiewicz did not agree that he and Harrison had mutually agreed not to submit the claim, stating "We never mutually agreed on anything. He never gave me more specific information regarding the claim *** basically he just mentioned the claim and left it like he didn't want to turn it in." Baskiewicz never told Harrison or anyone from Metrolift that all accidents are supposed to be reported to the carrier and if they are not, the loss might not be covered.

Baskiewicz did receive an e-mailed copy of Harrison's letter to First Chicago, to which he e-mailed a response:

"Everything looks good except you should leave off the part that you had no direct dealings with CM auto as they billed you direct as well as for any endorsements and sent you the policies direct. There were even times when you guys called them direct to make a payment. Everything else looks good!! When Kenny gets in, I will give him a copy of the letter as well."

On August 13, 2007, Wilson filed suit against Molda in the circuit court of Cook County, claiming personal injuries and damages as a result of his negligence. Wilson v. Molda, No. 07 L 8517. On January 11, 2008, Molda's attorney contacted Dahl in his capacity as president of Metrolift by mail, informing him of the suit; Molda was no longer employed by Metrolift at the time. The letter from the attorney further advised Dahl to forward the information to Metrolift's counsel and its automobile insurance carrier, since the accident occurred in the course of Molda's employment with Metrolift. Dahl testified that the letter was the first time he was informed of the lawsuit. Metrolift then reported the lawsuit to Associated.

Ken South testified in his deposition that an auto loss report was completed and submitted to First Chicago three to four weeks later, at the end of January or beginning of February 2008; in its complaint, First Chicago alleges that it first received notice on or about March 26, 2008. On March 10, 2008, Wilson filed a motion for leave to file an amended complaint adding Metrolift as a party defendant. On April 2, 2008, First Chicago sent a reservation of rights letter to Metrolift, indicating that First Chicago was undertaking an investigation to determine whether they owed Metrolift coverage under the policy. The

letter stated that Metrolift did not comply with the notice provision of the policy, as well as noting that the motion to add Metrolift to the case took place after the statute of limitations had expired.

On April 23, 2008, Wilson amended her complaint to add Metrolift as an additional defendant under the theory of *respondeat superior*.[4] On April 24, 2008, First Chicago filed a complaint in the chancery division for declaratory judgment against Metrolift, Molda, and Wilson. In its complaint, First Chicago alleges both that it had received late notice of the loss and of the lawsuit. Metrolift was voluntarily dismissed from the declaratory case on September 30, 2009, after agreeing to be bound by any final judgment entered in the matter.

In the declaratory action, Molda filed a counterclaim and third-party complaint on October 13, 2009, against Metrolift and First Chicago. Count I of the counterclaim sought indemnification from First Chicago based on Metrolift's insurance policy for "any judgment rendered" against Molda in his lawsuit against Wilson; count II sought indemnification from Metrolift.[5] First Chicago filed a motion to dismiss[6] count I of Molda's counterclaim, arguing that the claim was hypothetical and that Molda was seeking an advisory opinion. On November 9, 2009, First Chicago filed a motion for summary judgment on its declaratory judgment action.

On February 9, 2010, the trial court held a hearing on the motions. The court found that there was no set of facts that could establish that Harrison or Baskiewicz timely notified First Chicago of Molda's accident, and it concluded that "there was a serious failure to comply with the notice requirement of the policy." The court entered an order granting First Chicago's motion for summary judgment, finding that Metrolift did not provide notice as required by the policy and, therefore, First Chicago did not owe coverage under the policy for Molda's accident; the court also granted First Chicago's motion to dismiss count I of Molda's counterclaim as moot. Wilson filed a motion to reconsider on March 18, 2010, which was denied. This appeal follows.

## ANALYSIS

Defendants raise two issues on appeal, both related to the issue of notice. First, they claim that First Chicago is estopped from denying it

---

[4]Metrolift was later dismissed from the case on statute of limitations grounds, a decision that was affirmed on appeal. *Wilson v. Molda*, 396 Ill. App. 3d 100 (2009).

[5]Molda voluntarily dismissed his complaint against Metrolift on February 9, 2010.

[6]First Chicago did not state under what section of the supreme court rules it was bringing the motion.

received timely notice of Molda's accident, because Associated was First Chicago's agent for notice and notice to an agent is imputed to the principal. Second, they claim that as to Molda, notice to First Chicago was timely and policy concerns should lead us to construe the insurance contract in favor of coverage.

The construction of an insurance policy and a determination of the rights and obligations of the parties thereunder are questions of law for the court to decide and are appropriate subjects for disposition by way of summary judgment. *Steadfast Insurance Co. v. Caremark RX, Inc.*, 359 Ill. App. 3d 749, 755 (2005) (citing *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993)). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2008). We review a circuit court's decision on a motion for summary judgment *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

"Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine*, 154 Ill. 2d at 102. "Mere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). A defendant moving for summary judgment bears the burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The defendant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor, or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

Defendants' first argument is that First Chicago is estopped from denying that it received notice of Molda's accident because Harrison informed Baskiewicz of the accident during a telephone conversation less than 48 hours after it occurred. A notice provision in an insurance contract is a "valid prerequisite[ ]" to coverage under the policy. *Country Mutual Insurance Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 311 (2006); *Berglind v. Paintball Business Ass'n*, 402 Ill. App. 3d 76, 85 (2010) ("notice provisions are not merely technical requirements but, rather, conditions precedent to the triggering of the insurer's

contractual duties"). In the case at bar, the notice provision of the First Chicago insurance policy required Metrolift to "give [First Chicago] or [its] authorized representative prompt notice of the 'accident' or 'loss'." In their briefs, the parties both interpret "prompt notice" to mean "within a reasonable time." If Metrolift breached its insurance policy by failing to give notice of the accident within a reasonable time, Metrolift does not have a right to coverage under the First Chicago policy. See *Livorsi Marine*, 222 Ill. 2d at 312 (citing *Simmon v. Iowa Mutual Casualty Co.*, 3 Ill. 2d 318, 322-23 (1954)).

Defendants argue that Harrison's conversation with Baskiewicz constituted notice to First Chicago's "authorized representative." Defendants' argument relies on the theory that notice to an agent is imputed to its principal. In the insurance context, an insurance broker is generally considered to be the agent of the insured and not the insurance company unless the agent is a general agent of the insurance company. *State Security Insurance Co. v. Burgos*, 145 Ill. 2d 423, 431 (1991); *Founders Insurance Co. v. White*, 367 Ill. App. 3d 883, 888 (2006); *Young v. Allstate Insurance Co.*, 351 Ill. App. 3d 151, 162 (2004); *Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer Services, Inc.*, 138 Ill. App. 3d 574, 582 (1985). However, there are situations in which an insurance broker can act as the agent of the insurance company or even as the agent of both the insured and the insurance company. *Burgos*, 145 Ill. 2d at 431; *Empire Fire & Marine Insurance Co. v. Faith Truck Lines, Inc.*, 178 Ill. App. 3d 356, 359 (1988). Additionally, even if the broker does not have the actual authority to act as the insurer's agent for notice, it may have apparent authority to do so. *Burgos*, 145 Ill. 2d at 431. See also *Long v. Great Central Insurance Co.*, 190 Ill. App. 3d 159, 165-66 (1989); *Empire*, 178 Ill. App. 3d at 359-60; *Mitchell Buick*, 138 Ill. App. 3d at 583; *American Home Assurance Co. v. City of Granite City*, 59 Ill. App. 3d 656, 663 (1978); *State Security Insurance Co. v. Goodman*, 6 Ill. App. 3d 1008, 1011-12 (1972); *Boston Store of Chicago v. Hartford Accident & Indemnity Co.*, 227 Ill. App. 192, 203-04 (1922); 13 Couch on Insurance 3d §187:73 (1999); 11 Eric M. Holmes, Holmes' Appleman on Insurance 2d §68.8 (1999).

Apparent authority is that authority which a reasonably prudent person would naturally suppose the agent to possess, given the words or conduct of the principal. *Burgos*, 145 Ill. 2d at 431-32. "It is a well-established precept of agency law that a principal will be bound by the authority he *appears* to give to another, as well as that authority which he actually gives." (Emphasis in original.) *Burgos*, 145 Ill. 2d at 431 (citing *Lynch v. Board of Education of Collinsville Community Unit District No. 10*, 82 Ill. 2d 415, 426 (1980)). Once the principal has

created the appearance of authority, he is estopped from denying it to the detriment of a third party. *Burgos*, 145 Ill. 2d at 432.

The apparent authority of an insurance broker to act as an agent of the insurance company for notice can be established through the course of dealings between the broker and the insurance company. *Burgos*, 145 Ill. 2d at 432. "Where an insurer's manner of dealing with the broker in regard to the insured would lead the insured to believe that the broker had the authority to perform the acts in question, the insurer is estopped to deny the broker's authority to perform those acts." *Burgos*, 145 Ill. 2d at 432. Moreover, acquiescence in the insurance broker's conduct by the insurance company under prior circumstances is sufficient to establish the broker's apparent authority. *Burgos*, 145 Ill. 2d at 432.

In the case at bar, there is evidence that Associated could have had apparent authority to act on First Chicago's behalf with regard to accepting notice from Metrolift. Associated had been placing clients with First Chicago since approximately 1996, and Metrolift had had an insurance policy with First Chicago for several years at the time of the accident. The First Chicago policy included Associated's name, address, and telephone number on its declarations page as the producer. It did not provide any other contact information, nor was any other individual or business other than Metrolift named anywhere within the policy. If a claim was to be made there was no reference to a phone number or person in his representative capacity to contact other than "our authorized representative." Harrison testified that during the course of his dealings with Associated and First Chicago, he followed the same pattern: speaking with Baskiewicz about an incident and deciding what action to take, after which Baskiewicz would report the claim and obtain a claim number from First Chicago and assist Harrison in filing a claim. Thus, there was a pattern of conduct on prior claims between First Chicago and Associated in which Associated would accept notice of a claim and submit the information to First Chicago. As a result, there are material questions of fact that need to be decided which would defeat a motion for summary judgment.

Defendants compare the conduct present in the case at bar to the facts in the Illinois Supreme Court case of *State Security Insurance Co. v. Burgos*, 145 Ill. 2d 423. In that case, the Burgoses obtained insurance coverage for their grocery store from State Security, purchasing the policy through Robert Patis, an insurance broker. *Burgos*, 145 Ill. 2d at 427. After a customer was shot and killed outside of the store by Burgos' son and employee, Burgos telephoned Patis twice and informed him of the shooting. *Burgos*, 145 Ill. 2d at 427. Patis visited Burgos the next day to discuss the incident, telling Burgos

"not to worry and that he would take care of the situation." *Burgos*, 145 Ill. 2d at 427. Patis also told Burgos that he did not believe that Burgos was liable for the shooting and the insurance policy would not apply because the shooting occurred outside of the store. *Burgos*, 145 Ill. 2d at 427-28. Patis did not inform State Security of the incident until two years later, when he forwarded the complaint and summons that Burgos had just received to the company. *Burgos*, 145 Ill. 2d at 428.

The Burgoses had a business relationship with Patis for over 20 years. *Burgos*, 145 Ill. 2d at 428. The insurance policy was issued by State Security through its general agent, Guild Insurance Agency (Guild), and was delivered to them by Patis. *Burgos*, 145 Ill. 2d at 428. The Burgoses paid their premiums to Patis, who then forwarded the payments to Guild, and all notices concerning cancellation, premium changes, or renewals were sent by Guild to Patis, who then forwarded them to the Burgoses. *Burgos*, 145 Ill. 2d at 428. On the declarations page of the policy, the word " 'Representative' " was followed by an area for the contact information of the " 'Agent or Broker.' " *Burgos*, 145 Ill. 2d at 428-29. Guild's contact information was typed onto the form, but Patis covered Guild's contact information with a sticker containing the name and address of "the 'Robert Patis General Insurance Agency.' " *Burgos*, 145 Ill. 2d at 429. Patis also sent the Burgoses a cover letter instructing them to notify his office in case of a loss. *Burgos*, 145 Ill. 2d at 429.

State Security filed a complaint for declaratory judgment, seeking a declaration that it had no duty to defend or indemnify the Burgoses; State Security argued that the Burgoses had not complied with the policy's notice provision. *Burgos*, 145 Ill. 2d at 426-27. The trial court granted summary judgment in favor of the shooting victim's estate, finding that the notification to Patis constituted notice under the policy because Patis had the apparent authority to act as State Security's agent for the purpose of receiving notice. *Burgos*, 145 Ill. 2d at 429.

The Illinois Supreme Court held that State Security's manner of dealing with Patis and the Burgoses "created the appearance that Patis had authority to accept notice of occurrences." *Burgos*, 145 Ill. 2d at 433. The court pointed to the facts that Patis delivered the policy to the Burgoses, that the Burgoses paid their premiums to Patis, and that all notices were sent through Patis. *Burgos*, 145 Ill. 2d at 433. The court noted that "the Burgoses had no contact whatsoever with plaintiff, except through Patis. *** [The] lack of direct contact was due primarily to plaintiff's decision to use Patis as its intermediary for every aspect of its transactions with the Burgoses." *Burgos*, 145 Ill. 2d at 433.

The court further found that the appearance of Patis' authority was strengthened by the language of the insurance policy, which asked for the contact information of the " 'Agent or Broker' " in the area marked " 'Representative.' " *Burgos*, 145 Ill. 2d at 435. It noted that because of that language, it was foreseeable that Patis would insert his contact information in the space, and that the provision invited such a practice. *Burgos*, 145 Ill. 2d at 435. The court also indicated that "the insured's level of sophistication in business and insurance matters" was a relevant consideration in determining whether the belief that Patis was an authorized agent for purposes of receiving notice was reasonable. *Burgos*, 145 Ill. 2d at 437.

Finally, the court held that the term " 'authorized agent' " in the insurance policy was ambiguous, because it was not defined in the policy. *Burgos*, 145 Ill. 2d at 438-39. "With no policy provision defining the term, the insured is left to determine for himself who or what entity qualifies as an 'authorized agent.' " *Burgos*, 145 Ill. 2d at 439. Since it was ambiguous, the court concluded that the term must be interpreted in favor of coverage and thus it was reasonable for the Burgoses to believe that Patis was State Security's authorized agent. *Burgos*, 145 Ill. 2d at 440.

We agree with defendants that there are a number of similarities between the case at bar and *Burgos*. While Metrolift did, on occasion, deal with First Chicago directly, most of its communication regarding its insurance policy occurred through Associated. Additionally, the declarations page of the First Chicago policy listed the name and contact information for Associated; no other contact information was included, nor was the name of any other person or entity who could be First Chicago's "authorized representative." Thus, like in *Burgos*, it would have been reasonable for an insured to believe that Associated was the authorized representative of First Chicago. Therefore, there are sufficient facts in the record to show that there are factual findings that need to be made and that summary judgment for First Chicago was inappropriate.

However, even if Associated had authority to act as First Chicago's agent for notice, First Chicago argues that the notice was not sufficient because Baskiewicz and Harrison agreed that notice would not be provided to First Chicago. We first note that Harrison testified that they mutually agreed that notice would not be provided; Baskiewicz initially did not recall the conversation at all, and ultimately testified that there was no mutual agreement not to report the accident. The decision on which individual's account is to be believed requires a factual determination, and that alone makes summary judgment inappropriate. See *Berglind*, 402 Ill. App. 3d at 90 ("On a motion for summary judgment, the court cannot make a credibility determination.").

First Chicago claims that notice to an agent is not imputed to a principal when the facts support the inference that the agent will conceal the information from the principal. *Neagle v. McMullen*, 334 Ill. 168, 181 (1929); *Merchants' National Bank of Peoria v. Nichols & Shepard Co.*, 223 Ill. 41, 53 (1906); *Tesluk v. Metropolitan Life Insurance Co.*, 130 Ill. App. 2d 290, 294-95 (1970); *Woodlawn Farm Co. v. Farmers & Breeders Livestock Insurance Co.*, 227 Ill. App. 577, 583-84 (1923). However, in the cases in which that principle is applicable, the agent is concealing information due to fraud or because it would be against the agent's interest to reveal the information to the principal. See, *e.g.*, *Neagle*, 334 Ill. at 180-81 (refusing to impute notice where it was in interest of agent to conceal existence of trust on property purchased by principal); *Woodlawn Farm Co.*, 227 Ill. App. at 584 (refusing to impute notice where insurance agent had "every reason, from a personal, financial standpoint," to conceal information relating to the health of an insured animal). Additionally, the facts present in those cases cited indicate that the concealment occurred at the time of the application for the insurance policy. See, *e.g.*, *Tesluk*, 130 Ill. App. 2d at 295 (notice was not imputed to principal when insured was aware that agent did not include information regarding nervous breakdown on application because it would " 'confuse the matter' "). These cited cases do not include the situation that occurred here; Associated did not have an adverse interest to First Chicago that would result in its being in Associated's best interest not to provide notice, nor was there any fraud in the Metrolift's application for the policy or in their conduct. Thus, the exception as argued may not be applicable here.

Moreover, even if notice was not imputed to First Chicago, First Chicago received actual notice by March 2009. In their second argument on appeal, defendants claim that with respect to Molda, his notice was reasonable, because he was unaware of the policy. However, the notice provision applies to Metrolift as the named insured, not to Molda; section IV(A)(2)(a) indicates that the named insured was required to provide "prompt notice" of the accident or loss. As an employee of Metrolift, Molda was an "other involved 'insured' " and was required to forward any legal papers involved with the case, and was also required to cooperate with First Chicago's investigation, settlement, or defense of the suit.

Whether notice is reasonable depends on the facts and circumstances of the case. *Livorsi Marine*, 222 Ill. 2d at 311-12 (citing *Barrington Consolidated High School v. American Insurance Co.*, 58 Ill. 2d 278, 282 (1974)). Courts may consider a number of factors in determining whether notice is reasonable, including:

"(1) the specific language of the policy's notice provisions; (2) the degree of the insured's sophistication in the world of commerce and insurance; (3) the insured's awareness that an occurrence as defined under the terms of the policy has taken place; (4) the insured's diligence and reasonable care in ascertaining whether policy coverage is available once the awareness has occurred; and (5) any prejudice to the insurance company." *Berglind*, 402 Ill. App. 3d at 86 (citing *Livorsi Marine*, 222 Ill. 2d at 313).

In the case at bar, First Chicago received notice of the claim by March 2009. We cannot find that this notice was unreasonable as a matter of law. As noted, the language of the policy's notice provision requires Metrolift to provide "prompt notice" of the accident to First Chicago or its authorized representative. While Harrison had experience with filing claims with Associated, making him a somewhat sophisticated party, the evidence in the record most favorable to the nonmovant indicates that Harrison routinely began his dealings with Baskiewicz by discussing the incident with him and deciding whether a claim should be filed. In the case of Molda's accident, Harrison was aware that the accident had occurred, and called Baskiewicz shortly thereafter; Harrison testified that they discussed the proper course of action to take, and decided to adopt a "wait and see" approach. It is not clear from the record whether Harrison and Baskiewicz had ever adopted such an approach in the past and, if so, what the result of that approach was; thus, we cannot say that Harrison should have known that his conversation with Baskiewicz did not provide notice or that his failure to act would bar Metrolift from coverage under the policy.

Additionally, we cannot say that First Chicago suffered any prejudice by the delay. First Chicago did not provide any evidence that it was prejudiced, and instead argues that once it is determined that notice was unreasonably and inexcusably late, the failure to prove prejudice is irrelevant. However, it has not yet been determined whether notice was unreasonable, and prejudice is a factor in that determination. See *Livorsi Marine*, 222 Ill. 2d at 313. In the case at bar, as defendants point out, the only parties prejudiced were Wilson and Molda, who were not even aware that Molda was covered under the policy.

First Chicago points to several cases that have found briefer delays in notice to be unreasonable as a matter of law, arguing that the delay in this case was more egregious. However, the determination of whether a notice is reasonable depends on the facts particular to that case (see *Livorsi Marine*, 222 Ill. 2d at 311-12), and accordingly, we will not find the delay here unreasonable as a matter of law simply

because other courts have found unreasonable delays under other circumstances before them. It is another question of fact that must be decided, not appropriate for the granting of summary judgment.

Additionally, the cases cited by First Chicago contain factual situations distinguishable from the case at bar. For instance, in *Safeco Insurance Co. of Illinois v. Treinis*, 238 Ill. App. 3d 541, 548 (1992), a delay of 6½ months was found to be unreasonable. In that case, the insured called his insurance agent a few days after his roommate had been in an automobile accident, telling the agent that an accident had occurred and that he would phone again with the details; that was the last direct contact anyone in the lawsuit had with the insured. *Treinis*, 238 Ill. App. 3d at 543. The insurance agency received the police report 6½ months later, and forwarded it to the insurance company. *Treinis*, 238 Ill. App. 3d at 543.

The insurance policy required written notice to be given as soon as practicable, and the trial court granted summary judgment in the insurance company's favor. *Treinis*, 238 Ill. App. 3d at 548. The victim of the accident contended that the notice was received by the insurance company as soon as practicable. *Treinis*, 238 Ill. App. 3d at 548. On appeal, the court held that "[t]he circumstances here *** are that Treinis contacted his insurance agent within a few days after the occurrence but never again contacted anyone and it was only his insurance agent who 6½ months later contacted Safeco. Six and a half months on its face is not practicable in light of the fact that there were no extenuating circumstances after the accident which would prevent notice." *Treinis*, 238 Ill. App. 3d at 548.

In the case at bar, the situation is quite different from that in *Treinis*. Harrison's testimony indicated that he spoke with Baskiewicz and they determined that they would adopt a "wait and see" approach. Harrison did inexplicably disappear after the call; he did not act because they had agreed that he would not act. Baskiewicz denied that they discussed the "wait and see" approach. Thus, there is a question of fact to be decided concerning Harrison and Baskiewicz's conversation and whether First Chicago was prejudiced by the delay. Further, there is no evidence that Molda's insurance coverage would not be sufficient to cover the injuries sustained by Wilson. We cannot find that it was unreasonable as a matter of law to delay the notice until Metrolift became aware of the lawsuit because there are factual issues that need to be resolved.

## CONCLUSION

We find that there are factual issues that need to be decided to determine whether Associated was acting as the agent of First Chicago

for purposes of receiving notice from Metrolift. Alternatively, we cannot find as a matter of law that the March 2009 notice received by First Chicago was unreasonable. Therefore, summary judgment in First Chicago's favor was inappropriate and must be reversed.

Reversed and remanded.