# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Cove Management v. AFLAC, Inc.*, **2013 IL App (1st) 120884**

---

| | |
|---|---|
| Appellate Court Caption | COVE MANAGEMENT, Plaintiff-Appellant, v. AFLAC, INC., a Corporation, Defendant- Appellee (Darren Galgano and Barbier Group, Inc., Defendants). |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-0884 |
| Filed | March 8, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A property management company's action for breach of contract, "ratification" and unjust enrichment against defendant insurance company based on a lease executed by an independent contractor engaged by the insurer to sell policies was properly dismissed, notwithstanding plaintiff's contention that the independent contractor had apparent authority to execute the lease on the insurer's behalf, that the insurer ratified the lease, and that the insurer was unjustly enriched, since plaintiff failed to make a reasonable inquiry as to whether the independent contractor had authority to bind the insurer, the insurer had no knowledge of the lease until after plaintiff sued, and without knowledge, the insurer could not accept the services provided. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-9069; the Hon. Brigid Mary McGrath, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Samuel A. Shelist, of Shelist Law Firm, LLC, of Chicago, for appellant.

Peter H. Rodenburg and Randall E. Server, both of Tucker Robin & Merker, LLC, of Chicago, for appellee.

Panel

JUSTICE GORDON delivered the judgment of the court, with opinion.

Presiding Justice Lampkin and Justice Hall concurred in the judgment and opinion.

## OPINION

¶ 1     Plaintiff Cove Management filed a lawsuit against defendants Darren Galgano, Barbier Group, Inc., and AFLAC, Inc.[1] Against defendant AFLAC, plaintiff alleged counts of breach of contract, "ratification," and unjust enrichment arising from conduct by defendant Darren Galgano.[2] AFLAC filed a combined motion, pursuant to both sections 2-619(a)(9) and 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615, 2-619(a)(9) (West 2010)), to dismiss the claims against it, setting forth each motion in separate sections. The trial court granted AFLAC's section 2-619(a)(9) motion and dismissed the claims against AFLAC with prejudice, finding that AFLAC had sufficiently raised affirmative matters which defeated plaintiff's claims. In this interlocutory appeal, plaintiff appeals the dismissal of its claims against AFLAC, pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). For the following reasons, we affirm.

¶ 2                                BACKGROUND
¶ 3                                I. The Parties
¶ 4     Defendant AFLAC is engaged in the business of underwriting and selling insurance policies in the health care field. On September 22, 2004, defendant Darren Galgano signed an "Associate's Agreement" with AFLAC, which engaged Galgano to solicit applications for insurance policies offered for sale by AFLAC. The agreement also states that Galgano is an independent contractor, without the authority to bind AFLAC for Galgano's "debts, faults, or actions." The agreement specifically states that Galgano is prohibited from entering

---

[1]The complaint refers to AFLAC simply as "AFLAC." AFLAC notes in its motions to dismiss that it was "incorrectly sued" as AFLAC because defendant was incorporated as American Family Life Assurance Company of Columbus.

[2]Defendants Galgano and Barbier Group, Inc., Galgano's corporation entity, are not parties to this appeal.

into contracts or incurring debt on behalf of AFLAC. On September 5, 2005, Galgano signed a "District Sales Coordinator's Agreement," which incorporated the terms of the "Associate's Agreement" and specifically withheld authority from Galgano to "rent any office space or telephone, open any bank account, or make any expenditure, obligation or commitment for any purpose in the name of AFLAC without specific written authorization from the president, a vice president, or secretary of AFLAC." On August 6, 2007, Galgano signed a "Regional Sales Coordinator's Agreement," which incorporated the "District Sales Coordinator's Agreement" and once again withheld authority from Galgano to rent office space, incur debt, or enter into a contract on AFLAC's behalf without express written authorization of the president, a vice president, or a secretary of AFLAC.

¶ 5      On September 4, 2009, Galgano leased retail property located at 4701 Midlothian Turnpike in Crestwood, Illinois, from plaintiff Cove Management. The first page of the lease listed plaintiff as the lessor, listed "AFLAC" as the tenant,[3] and listed Galgano as the guarantor. The lease provided that the permitted use of the space was "insurance services." On the signature page, Joseph Bertucci, on behalf of plaintiff, signed under "lessor," and Galgano signed his own name under "lessee"[4] and "guarantor." He did not indicate on the signature page that he was signing on behalf of AFLAC.

¶ 6      II. The Complaint and Amended Complaint

¶ 7      Initially, plaintiff filed a three-count complaint against all three defendants, alleging (1) breach of contract, (2) breach of guarantee, and (3) unjust enrichment or *quantum meruit*. AFLAC filed a motion under section 2-619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)) to dismiss the complaint, affirmatively asserting that Galgano was an independent contractor who could not bind AFLAC to the lease.

¶ 8      The trial court granted AFLAC's motion and dismissed the complaint without prejudice to replead. Plaintiff then filed an amended complaint, alleging counts of breach of contract, "ratification," and "unjust enrichment or *quantum meruit*" against AFLAC. Plaintiff later filed a second amended complaint, alleging three counts against AFLAC: breach of contract (count I); ratification (count II); and unjust enrichment (count IV). Plaintiff attached numerous exhibits to the complaint, including (1) the signed agreements between AFLAC and Galgano which engaged Galgano's services on behalf of AFLAC and limited Galgano's authority to sign contracts on AFLAC's behalf; (2) Lynn Fry's affidavit, in which she stated that she was a vice president of AFLAC at the time Galgano signed the lease, and that Galgano is an independent contractor without authority to sign the lease on behalf of AFLAC; (3) the signed lease; (4) a check, dated July 21, 2012, payable to plaintiff for $1,610 from an account in the name of defendant Barbier Group, Inc., at 414 North Orleans Street,

---

[3]The front page of the lease used the word "tenant," but not the word "lessee" to describe AFLAC.

[4]On the signature page, the lease used the word "lessee," but not the word "tenant" to describe Galgano.

-3-

Suite 601 in Chicago, Illinois; (5) a photocopy of an envelope addressed to plaintiff, bearing AFLAC's trademark, but not an address for AFLAC, and the phrase "Member, President's Club"; (6) photocopies of five different people's business cards, including Galgano's, all of which bore AFLAC's trademark and the phrase "An Independent Associate Representing Aflac," one business card designating Galgano as "Regional Sales Coordinator" located at 414 North Orleans Street, Suite 601 in Chicago, Illinois, and listing telephone numbers at locations in the Chicago Loop, Chicago Ridge, and South Holland, one business card designating Robert Czerwinski as "District Sales Coordinator" located at 4701 Midlothian Turnpike, Suite 1 in Crestwood, Illinois, one business card designating Qiana Cochran as "District Sales Coordinator" located at 4701 Midlothian Turnpike, Suite 1 in Crestwood, Illinois, one business card designating Mark Zuro as "Associate" located at 4701 Midlothian Turnpike, Suite 1 in Crestwood, Illinois, and one business card designating Tiffany M. Allen as "District Sales Coordinator" located at 4701 Midlothian Turnpike, Suite 1 in Crestwood, Illinois; (7) printouts from Internet search engines Google.com and Yahoo.com, which indicated telephone listings for AFLAC at the subject property's address and a listing of the subject property's address and phone number under aflac.com; (8) printouts from the website merchantcircle.com, which states that an AFLAC office was located at the Midlothian address;[5] (9) a photograph of a sign bearing the AFLAC trademark and the phrase "Reserved Parking, Agent of the Month!";[6] (10) a photograph of a building bearing the number "4701"; (11) a photograph of a business marquee bearing the name "Crestwood Cove," the number "4701," and the name AFLAC on the list of businesses located at the building; and (12) photographs of paper and office supplies on shelves.[7]

¶ 9    In discovery, plaintiff responded pursuant to a bill of particulars that no person other than Galgano "held out" Galgano as having authority to bind AFLAC to the lease at issue, and that the only promotional material they received prior to signing the lease was Galgano's business card and maybe his stationery. The business card is designed in AFLAC's colors and states that Galgano is an "Independent Associate Representing AFLAC" and further states Galgano's position as "Regional Sales Coordinator."

¶ 10    After the filing of the second amended complaint, AFLAC filed a combined motion under sections 2-615 and 2-619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2-615, 2-619(a)(9) (West 2010)) to dismiss counts I, II, and IV of the complaint. AFLAC's section 2-619(a)(9) motion argued that AFLAC should be dismissed because Galgano was an independent contractor without the authority to bind AFLAC to the lease, and plaintiff could prove no set of facts showing it was entitled to relief. AFLAC's section 2-615 motion

_____

[5]The website lists the municipality as Midlothian, Illinois, rather than Crestwood, Illinois, but the street number, street name, and ZIP code are otherwise identical to the address listed in the lease.

[6]The body of the complaint does not state that the sign was located at the subject property.

[7]The body of the complaint does not explain where the shelves depicted are located or explain what the shelves contain.

additionally argued that count IV should be dismissed from the complaint because plaintiff failed to properly plead the necessary elements of its unjust enrichment claim. AFLAC attached to its motion to dismiss two affidavits of Lynn Fry, a vice president of AFLAC at the time Galgano signed the lease. In these affidavits, Ms. Fry verifies that Galgano had no authority to enter into any lease and that AFLAC did not know about the existence of the lease until plaintiff filed its lawsuit. AFLAC also attached plaintiff's responses to the bill of particulars.

¶ 11 Plaintiff responded by arguing that Galgano's actions indicated that he had apparent authority to sign the lease on AFLAC's behalf, that AFLAC's conduct subsequent to Galgano signing the lease amounted to ratification, and that plaintiff had properly pleaded unjust enrichment. Plaintiff did not attach any affidavits to its response.

¶ 12 On January 11, 2012, the trial court found that AFLAC properly raised affirmative matters that defeated plaintiff's claim, and granted AFLAC's section 2-619(a)(9) motion, dismissing with prejudice counts I, II, and IV, which were all the counts against AFLAC. The trial court later inserted Illinois Supreme Court Rule 304(a) language that there was no just reason to delay enforcement or appeal of its order dismissing the claims against AFLAC. This appeal followed.

¶ 13          ANALYSIS

¶ 14 On appeal, plaintiff argues that the trial court improperly granted AFLAC's section 2-619(a)(9) motion to dismiss. AFLAC claims in its motion that Galgano was an independent contractor who had no authority to bind AFLAC to any lease agreement, which affirmatively bars plaintiff's claims. Plaintiff argues that Galgano had apparent authority to enter into the lease on AFLAC's behalf, and that AFLAC ratified the lease and that plaintiff has a cause of action against AFLAC for unjust enrichment. For the following reasons, we affirm.

¶ 15          I. Jurisdiction

¶ 16 As a preliminary matter, we observe that we have jurisdiction to hear this appeal pursuant to Supreme Court Rule 304 (eff. Feb. 26, 2010). Rule 304(a) provides in relevant part:

> "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. Such a finding may be made at the time of the entry of judgment or thereafter on the court's own motion or on motion of any party." Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010).

Since the trial court dismissed all the claims against defendant AFLAC and made an express written finding "as required by Supreme Court Rule 304," we have jurisdiction to hear this appeal.

¶ 17        II. Standard of Review

¶ 18 Our review of a dismissal under either section 2-615 or section 2-619 is *de novo*. *Patrick*

*Engineering v. City of Naperville*, 2012 IL 113148, ¶ 31; *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 12 (2005). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 19                                 III. Combined Motions to Dismiss

¶ 20        A defendant may move to dismiss a complaint pursuant to section 2-619.1 of the Code of Civil Procedure, which allows a party to file a motion combining a section 2-615 motion to dismiss with a section 2-619 motion to dismiss. 735 ILCS 5/2-619.1 (West 2010). A section 2-615 motion to dismiss tests the legal sufficiency of the complaint, claiming that the complaint does not state a cause of action. By contrast, a section 2-619 motion to dismiss admits the sufficiency of the complaint, but asserts affirmative matter that the movant claims defeats the claim. *Patrick Engineering, Inc.*, 2012 IL 113148, ¶ 31; *King*, 215 Ill. 2d at 11-12. Affirmative matter would be anything affirmatively pleaded that would defeat the claim. 735 ILCS 5/2-619(a)(9) (West 2010).

¶ 21        AFLAC claimed that Galgano was an independent contractor who had no authority to bind AFLAC to any lease agreement. However, a section 2-619 motion admits as true all well-pleaded facts, as well as all reasonable inferences that may arise therefrom. *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8. Further, when ruling on a section 2-619 motion, a court must interpret all pleadings and supporting documents in favor of the nonmoving party. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008). However, a court cannot accept as true mere conclusions unsupported by specific facts. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). See also *Hanks v. Cotler*, 2011 IL App (1st) 101088, ¶ 17 (stating that a motion to dismiss under sections 2-615 and 2-619 admits well-pleaded facts, but that "conclusions of law and conclusory factual allegations not supported by allegations of specific facts are not deemed admitted" (internal quotation marks omitted)).

¶ 22                              IV. Plaintiff's Claim of Apparent Authority

¶ 23        In order to determine whether Galgano was an independent contractor or an agent of AFLAC, we must first determine Galgano's authority. "An agent's authority may be either actual or apparent, and actual authority may be either express or implied." *Zahl v. Krupa*, 365 Ill. App. 3d 653, 660 (2006); *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 56 (2009). Express authority is actual authority granted explicitly by the principal to the agent, while implied authority is actual authority proven circumstantially by evidence of the agent's position. *Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc.*, 326 Ill. App. 3d 126, 135-37 (2001). Apparent authority, by contrast, is authority imposed by equity. *Patrick Engineering*, 2012 IL 113148, ¶ 34.

¶ 24        Plaintiff's primary argument is that AFLAC clothed Galgano with apparent authority as its agent and thus AFLAC was liable as a lessee under the lease. Apparent authority is defined as follows:

"Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds his agent out as possessing–it is such authority as a

reasonably prudent man, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." *Wing v. Lederer*, 77 Ill. App. 2d 413, 417 (1966).

See also *First Chicago Insurance Co. v. Molda*, 408 Ill. App. 3d 839, 846 (2011) ("Apparent authority is that authority which a reasonably prudent person would naturally suppose the agent to possess, given the words or conduct of the principal."); *State Security Insurance Co. v. Burgos*, 145 Ill. 2d 423, 431 (1991).

In addition, we have held:

"Apparent authority in an agent to do an act for his principal must be based on the words and acts of his principal and cannot be based on anything the agent himself has said or done." *Lawcock v. United States Trotting Ass'n*, 55 Ill. App. 2d 211, 217 (1965).

See also *Gambino*, 398 Ill. App. 3d at 56 ("Apparent authority is cognizable when a principal, through words or conduct, creates the reasonable impression in a third party that his agent is authorized to perform a certain act on his behalf."). The doctrine of apparent authority is rooted in the doctrine of equitable estoppel. *Williams v. Ingalls Memorial Hospital*, 408 Ill. App. 3d 360, 370-71 (2011); accord *O'Banner v. McDonald's Corp.*, 173 Ill. 2d 208, 213 (1996). Where a principal has created the appearance of authority in an agent, and another party has reasonably and detrimentally relied upon the agent's authority, the principal cannot deny it. *First Chicago*, 408 Ill. App. 3d at 846-47. See also *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 31 (1999).

¶ 25 If there is no showing of reasonable and detrimental reliance upon the agent's authority, there can be no apparent authority. *O'Banner*, 173 Ill. 2d at 213; *Gambino*, 398 Ill. App. 3d at 56 ("[t]o prove the existence of apparent authority, a party must establish that *** the third party relied to his detriment on the agent's apparent authority").

¶ 26 The majority of evidence that plaintiff shows is evidence that came into existence after the signing of the lease, except for the statements and representations of Galgano, which cannot be considered. *Lawcock*, 55 Ill. App. 2d at 217. The business cards that Galgano gave to plaintiff showed a Chicago address with the word "AFLAC" in large letters, with phone numbers in Chicago's Loop, Chicago Ridge, and South Holland. The cards listed Galgano's email address using the domain "us.aflac.com" and "aflac.com," and designated Galgano as a "Regional Sales Coordinator" and "An Independent Associate Representing Aflac." The cards showed the name AFLAC in blue with the duck symbol on the "L" of "AFLAC." When using the Internet to look for AFLAC, plaintiff alleges that it found aflac.com listed at its Midlothian address. However, even though the sheet showing this Internet information was attached as an exhibit to plaintiff's complaint, its creation occurred after the lease was signed; thus, plaintiff could not have relied on it to its detriment. Likewise, we cannot consider the evidence (1) that when the office was set up, the parking sign had the AFLAC symbol and duck, (2) that AFLAC's stylized blue materials were in the office, inside and out, and (3) that AFLAC was listed on the directory of the building, because they all occurred after the lease was signed and thus there was not any reliance by plaintiff on that information when entering into the lease. Without any showing of a reasonable and detrimental reliance by plaintiff, there cannot be recovery for apparent authority.

¶ 27    In addition, there is a duty for one who is dealing with an agent who has apparent authority, which is set out in 3 Am. Jur. 2d *Agency* § 78 (1962). *Lawcock*, 55 Ill. App. 2d at 218.

> "A third person dealing with a known agent may not act negligently with regard to the extent of the agent's authority or blindly trust the agent's statements in such respect. Rather, he must use reasonable diligence and prudence to ascertain whether the agent is acting and dealing with him within the scope of his powers. The mere opinion of an agent as to the extent of his powers, or his mere assumption of authority without foundation, will not bind the principal; and a third person dealing with a known agent must bear the burden of determining for himself, by the exercise of reasonable diligence and prudence, the existence or nonexistence of the agent's authority to act in the premises. The principal, on the other hand, may act on the presumption that third parties dealing with his agent will not be negligent in failing to ascertain the extent of his authority as well as the existence of his agency." 3 Am. Jur. 2d *Agency* § 78 (1962).

See also *Gambino*, 398 Ill. App. 3d at 56 (a third party's belief in an agent's apparent authority must be "based upon his knowledge of the facts" and must be in good faith). Substantially the same rule is set out in 2A C.J.S. *Agency* § 162, at 801-02 (1972). Although we do not find it necessary to also quote that entire section here, one sentence is particularly worth mentioning:

> "If [the third person] knows, or has good reason for believing, that the acts exceed the agent's powers or if such reasonable inquiry as he is under the duty to make, would result in discovery of the true state of the powers, and he fails to fulfill that duty, he cannot assert an apparent authority effective against the principal." 2A C.J.S. *Agency* § 162, at 801-02 (1972).

See also *First Chicago*, 408 Ill. App. 3d at 846 (the third party must be "reasonably prudent"); *General Refrigeration & Plumbing Co. v. Goodwill Industries of St. Louis, Missouri*, 30 Ill. App. 3d 1081 (1975).

¶ 28    The record in the instant case does not show that plaintiff made any effort to determine whether Galgano was an independent contractor or an agent of AFLAC acting within the scope of his authority. Instead, plaintiff apparently relied exclusively on the statements and representations of Galgano that he had the authority to bind AFLAC to the lease on the premises.

¶ 29    We are mindful that plaintiff's complaint was dismissed on a section 2-619 motion and not a motion for summary judgment. However, plaintiff responded to AFLAC's request for bills of particular that "no person other than Galgano held out Galgano as having authority to bind AFLAC to the lease," and that the only AFLAC promotional material given to plaintiff prior to plaintiff's signing the lease was Galgano's business card and "maybe his stationary [*sic*]." Plaintiff's arguments that AFLAC must have known of Galgano's conduct are not the issue in this case. Since there is no showing of reasonable and detrimental reliance upon Galgano's authority, we cannot find that Galgano was acting under apparent authority. In addition, plaintiff failed to make a reasonable inquiry as they were under a duty to make.

¶ 30                                    III. Ratification

¶ 31        Plaintiff next argues that the trial court improperly dismissed its count for ratification of
the lease. "Ratification occurs when the principal learns of an unauthorized transaction, then
retains the benefits of the transaction or takes a position inconsistent with nonaffirmation."
(Internal quotation marks omitted.) *Gambino*, 398 Ill. App. 3d at 56. "For ratification to
occur, the principal must, *with full knowledge of the act*, manifest an intent to abide and be
bound by the transaction." (Emphasis added.) (Internal quotation marks omitted.) *Gambino*,
398 Ill. App. 3d at 56. "Ratification may be inferred from surrounding circumstances,
including long-term acquiescence, *after notice*, to the benefits of an allegedly unauthorized
transaction." (Emphasis added.) (Internal quotation marks omitted.) *Gambino*, 398 Ill. App.
3d at 56.

¶ 32        Plaintiff argues that AFLAC neither objected to Galgano's actions nor made any effort
to convey an objection to plaintiff. However, Lynn Fry's unchallenged affidavits explicitly
state that AFLAC had no knowledge that Galgano "had signed a lease for the premises" until
plaintiff filed its lawsuit. Therefore, AFLAC could not have had "full knowledge" of
Galgano's actions. *Gambino*, 398 Ill. App. 3d at 56. Although plaintiff submitted evidence
that its address was listed by AFLAC on AFLAC's website, plaintiff did not attach
counteraffidavits to its response to AFLAC's motions to dismiss, nor did plaintiff refute the
fact asserted in Lynn Fry's affidavit. "When supporting affidavits have not been challenged
or contradicted by counteraffidavits or other appropriate means, the facts stated therein are
deemed admitted." *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). Therefore, plaintiff has
admitted that AFLAC had no knowledge of the lease until plaintiff filed its lawsuit, and as
a result, cannot prove that AFLAC ratified the lease.


¶ 33                                    IV. Unjust Enrichment

¶ 34        Finally, plaintiff argues that the trial court improperly dismissed its count for unjust
enrichment. Plaintiff argues that AFLAC was unjustly enriched as a result of Galgano's use
of the subject premises and that plaintiff is entitled to *quantum meruit* recovery. *Quantum
meruit* is used as an equitable remedy to provide restitution for unjust enrichment. *Weydert
Homes, Inc. v. Kammes*, 395 Ill. App. 3d 512, 522 (2009). Plaintiffs often plead *quantum
meruit* as an alternative claim in breach of contract actions so that the plaintiff may recover
even if the contract is unenforceable. *Weydert Homes*, 395 Ill. App. 3d at 522. To recover
under a *quantum meruit* theory, a plaintiff must prove that: (1) it performed a service to the
benefit of the defendant; (2) it did not perform the service gratuitously; (3) *defendant
accepted this service*; and (4) no contract existed to prescribe payment for this service.
*Installco, Inc. v. Whiting Corp.*, 336 Ill. App. 3d 776, 781 (2002).

¶ 35        As stated above, Lynn Fry's unchallenged affidavits state that AFLAC had no knowledge
of the lease until plaintiff filed its lawsuit. This fact is deemed admitted because plaintiff did
not file counteraffidavits. *Zedella*, 165 Ill. 2d at 185. Without knowledge of the lease,
AFLAC could not accept the services provided, and as a result, plaintiff can prove no set of
facts to show that it is entitled to *quantum meruit* recovery. *Plastics & Equipment Sales Co.
v. DeSoto, Inc.*, 91 Ill. App. 3d 1011, 1017 (1980) (stating that recovery under *quantum*

*meruit* requires that AFLAC "knowingly accept" the service provided).

¶ 36                                          CONCLUSION

¶ 37        The trial court properly granted defendant AFLAC's section 2-619(a)(9) motion to dismiss plaintiff's claims against it. Plaintiff presented no evidence showing that AFLAC indicated, prior to the signing of the lease, that Galgano was an agent authorized to bind it to a lease or refuting that Galgano was an independent contractor. Plaintiff also failed to refute that AFLAC had no knowledge of the lease, and therefore plaintiff could not show that AFLAC ratified the lease or accepted its benefits.

¶ 38        Affirmed.