No. 2--07--0031      Filed: 7-7-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| LaSALLE BANK, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 04--CH--279 |
| | ) | |
| CATHERINE FERONE, | ) | |
| | ) | |
| Defendant-Appellant | ) | |
| | ) | |
| (Marc J. Biagini, Individually and as Trustee | ) | |
| of the 6604 Langley Court Trust dated | ) | Honorable |
| 5-6-2002, Unknown Owners, and | ) | Bonnie M. Wheaton, |
| Nonrecord Claimants, Defendants). | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

In this mortgage foreclosure action, defendant, Catherine Ferone, appeals the judgment of the circuit court of Du Page County, granting summary judgment in favor of plaintiff, LaSalle Bank, as to her affirmative defense. On appeal, defendant contends that the trial court erred in finding that (1) plaintiff was a bona fide mortgagee for value because plaintiff did not have actual or constructive notice of defendant's interest in the subject property or of the fraud that defendant Marc J. Biagini perpetrated on defendant; and (2) Biagini's fraud was fraud in the inducement rather than fraud in the execution. We reverse and remand.

The following summary of facts is drawn from the record on appeal, consisting of the various pleadings, depositions, and the like submitted by the parties. The genesis of this case is in the

friendship between defendant and Biagini's girlfriend, then wife, Denise. Biagini, in turn, became defendant's friend, and defendant retained Biagini to represent her at the closing for the subject property, as well as to draft her will and her aunt's will.

Before the spring of 2002, defendant was the trustee of the Catherine L. Ferone Revocable Family Trust, which held the title to the subject property. In the spring of 2002, when defendant's business began to fail, she turned to Biagini for help in obtaining a line of credit using her house, the subject property, as collateral. Biagini agreed to assist defendant.

According to defendant, on May 6, 2002, Biagini asked defendant to sign a power of attorney, effective for only 24 hours. Biagini represented to defendant that this would help him to arrange for an appraisal of the property. Instead of a power of attorney, Biagini presented defendant with a deed in trust. When defendant signed the deed in trust, she did not understand that the effect of the document was to quitclaim her interest in the subject property. Rather, defendant trusted Biagini because he was her lawyer and her friend, and she believed Biagini's representation that she was signing a power of attorney that would be valid only for 24 hours. Defendant thereafter did not receive a copy of the deed in trust. The effect of the deed in trust was to convey the subject property into a new trust, the "6604 Langley Court Trust." Biagini was the beneficiary of the 6604 Langley Court Trust. Defendant did not know either of the existence or of the terms of the 6604 Langley Court Trust when she signed the deed in trust that Biagini proffered.

Defendant conceded, however, that she had previously used power of attorney forms that Biagini had prepared to assist defendant in administering the estates of her aunt and her father. Additionally, the deed in trust was clearly, if not altogether conspicuously, labeled as a "deed in trust."

In August 2002, the subject property was appraised by Flavin Appraisals. Defendant testified that she believed the appraisal was in connection with the line of credit she was pursuing and for which she had signed the document she believed to be a 24-hour power of attorney. As it turned out, Flavin Appraisals was appraising the subject property for the mortgage that Biagini was taking out on it without defendant's knowledge or permission. Defendant told the appraiser that she was the owner of the subject property, and she informed the appraiser of the improvements that she had made as its owner. Plaintiff conceded that, in August 2002, before the mortgage on the subject property was executed by Biagini, defendant informed the appraiser that she was the owner of the subject property.

Plaintiff asserts that defendant contradicts herself by maintaining that she did not realize the appraiser was conducting an appraisal to support a mortgage when she admits that she was seeking a line of credit collateralized by the subject property. Plaintiff notes that defendant testified that she was present when the appraisal was conducted, along with her roommate, Christine Peters. Plaintiff further notes that defendant told the appraiser that she was hoping to get the money soon in order to do more projects on the subject property and that she never told the appraiser that she was not going to go ahead with the transaction.

We here digress to a small extent. In its statement of facts, plaintiff's characterization of defendant's "contradiction" borders closely upon argument (if it does not cross into it), which is prohibited by the supreme court rules. See 210 Ill. 2d R. 341(h)(6). We do not necessarily perceive defendant to have contradicted herself--the lack of knowledge and permission to which she refers concerns Biagini's procurement of a mortgage in his name with the proceeds to be disbursed to him, not a transaction resulting in the subject property collateralizing a loan from which she would receive

the proceeds. We caution plaintiff to follow the supreme court rules and to provide argument not in its statement of facts but only in the "argument" section of its brief. To the extent that plaintiff is providing argument in its statement of facts, we will disregard it and will consider only that portion of the statement of facts that complies with Rule 341(h)(6).

Plaintiff further notes that defendant denies that she granted permission for a mortgage to be placed on the subject property, but that she also states that she solicited Biagini's assistance to procure some sort of loan using the subject property as collateral. Plaintiff points out that defendant conceded that she was aware that she would not have been able to acquire a mortgage on her own, as a result of her poor credit history. Plaintiff further notes that defendant acknowledged that she needed a loan as a result of her financial hardship and her failing business venture. Plaintiff also points out that defendant agreed to allow Biagini to use his own information (plaintiff equates this to Biagini's credit history) to help her secure some sort of loan.

The record demonstrates that Biagini's application for the mortgage on the subject property included representations that Biagini had owned the subject property since 2000 or 2001. Defendant notes that, actually, she had owned the property since that time. Biagini also represented that he owned a property in Downers Grove. In fact, Biagini did not own and never had owned the Downers Grove property. Biagini also claimed that he received a monthly salary of $26,500; he did not.

Plaintiff eventually closed on the loan and issued the mortgage, paying the proceeds to Biagini. Some of the proceeds were used to pay off debts on several of Biagini's personal credit cards. Biagini later defaulted on the loan.

On February 20, 2004, plaintiff filed an action to foreclose the subject property. In May 2004 (and, plaintiff notes, at no time before then) defendant filed a police report alleging that she had been

-4-

defrauded by Biagini. In November 2004, defendant filed her affirmative defense to the foreclosure action, alleging that she had an interest in the subject property in spite of executing the deed in trust. Defendant further asserted that she executed the deed in trust as a result of the fraud perpetrated by Biagini.

Plaintiff filed a motion for summary judgment as to defendant's affirmative defenses. On January 24, 2006, the matter came before the trial court for hearing. The trial court ruled orally as follows:

"I don't believe that there is any genuine issue of material fact as to the fraud that was perpetrated here, but I believe that that does constitute fraud in the inducement and not fraud in the execution.

The operative document, I believe, is the deed in trust and that clearly states that it is a deed in trust and any reasonable person reading it would know that title was being transferred to Mr. Biagini, not personally, but as trustee. And that document was recorded on May 10th of 2002.

If there is, indeed, a duty of the mortgage lender to inquire as to the status of any tenant on the property, [defendant's] residence at [the] property is certainly not inconsistent with her status as the [grantor] of the deed in trust. Indeed, I think it would be very unusual to find the trustee of a deed in trust actually living in the property.

Certainly, she, herself, had a duty to advise the lender or the appraiser, as the lender's designee, of what her status of the property was.

Given all of the facts and circumstances in this case and the fact that she was actively seeking to have a mortgage provided to Mr. Biagini or to her through Mr. Biagini, I don't think that there is any question but that [plaintiff] is a bona fide mortgage lender for value.

As such, I think there are no genuine issues of material fact, and summary judgment in favor of [plaintiff] as to the affirmative defense is proper."

The trial court entered judgment in favor of plaintiff and against defendant on defendant's affirmative defense.

Defendant filed a motion to reconsider. On May 6, 2006, the trial court heard and denied the motion. The trial court ruled:

"In taking all of [defendant's] deposition testimony in the light most favorable to her, I think that it clearly establishes that she signed a document that she did not read. Even if she truly in her heart believed that she was filing--signing a 24-hour power of attorney, by all of the relevant case law, she's charged with the obligation to read it and to know the contents of it. The standard that you're urging upon the lender would require them to be clairvoyant.

The only even arguable notice that the lender would have of her interest in the property is a statement that she said to an appraiser whose name she cannot remember and whom she invited into her home and accompanied while he went around the house, according to her deposition testimony. I think that is just certainly insufficient to give even the most reasonable lender notice of her interest in the property as the owner.

[DEFENDANT'S COUNSEL]: But, your Honor, they --

THE COURT: Counsel, you've had your turn.

Even the documents all state that this property is not homestead property. So her presence in the property is not inconsistent with the documents that were signed at closing. Regardless of credibility, as I said, taking everything in the light most favorable to [defendant], I think it certainly does not establish that there was any -- any notice that would put a lender on the suspicion that this was anything other than a normal transaction. And the fact that some credit cards were paid off, that happens all the time at closings, absolutely, unless things have changed since I've been on the bench.

So taking all of your arguments into consideration, I think that the original ruling was correct, so I'm going to deny the motion for reconsideration."

Defendant timely appeals.

On appeal, defendant argues that the trial court erred in granting summary judgment in favor of plaintiff on her affirmative defense. We briefly review the familiar standards pertaining to summary judgments. Summary judgment is properly granted where the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2--1005(c) (West 2006); Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co., 227 Ill. 2d 102, 106 (2007). In reviewing the trial court's grant of summary judgment, we construe the evidence strictly against the moving party and liberally in favor of the nonmoving party. Buenz v. Frontline Transportation Co., 227 Ill. 2d 302, 308 (2008). We review de novo the trial court's grant of summary judgment. Buenz, 227 Ill. 2d at 308.

Defendant raises two issues. First, defendant contends that plaintiff had constructive notice about her ownership of the subject property. According to defendant, informing the appraiser,

defendant's agent, that she owned the subject property triggered in plaintiff a duty to more fully investigate. Defendant contends that the irregularities surrounding the mortgage also should have notified plaintiff of Biagini's fraud. Defendant points to Biagini's misrepresentations to plaintiff as to property he owned and his monthly income, as well as his direction that he receive the proceeds and that some of the proceeds be used to pay off his credit cards. All of these circumstances, according to defendant, were sufficient to alert plaintiff to the questionable nature of the transaction and to trigger plaintiff's duty to further investigate the circumstances surrounding the transaction. Defendant concludes that, because of this, the trial court erred in holding that plaintiff was a bona fide mortgagee for value. Second, defendant contends that Biagini committed fraud in the execution when he misled her about the nature of the deed in trust. According to defendant, because it was a fraud in the execution, it rendered the deed in trust void ab initio. Defendant concludes that, because the deed in trust was void, Biagini's mortgage based on the deed in trust was likewise void ab initio.

We agree with defendant's first contention. Her claim to the appraiser that she owned the subject property and that it was her home arguably should have triggered further inquiry by plaintiff. This claim of ownership, coupled with Biagini's misrepresentations in the mortgage application to plaintiff, arguably should have notified plaintiff that there was something amiss in the transaction. On the mortgage application, Biagini falsely claimed that he had owned the subject property since 2000 or 2001, that he owned another property in Downers Grove, and that he had a monthly salary of $26,500. Further, despite the fact that Biagini was the trustee of the land trust, he ordered that the loan proceeds be disbursed to him and not to defendant, who had told the appraiser that she was the

party seeking the loan, and that some be used to pay off his credit cards. These actions together suggest that plaintiff may have had a duty to further investigate the transaction.

This case presents a factual scenario similar to that in In re Ehrlich, 59 B.R. 646 (N.D. Ill. 1986). Ehrlich had listed certain property in Antioch as an asset in his bankrupt estate. Goldberg filed a complaint in the bankruptcy action, alleging that he was the actual beneficiary of the land trust that owned the property and that Ehrlich had fraudulently caused him to transfer the property into a second land trust of which Ehrlich claimed to be the beneficiary. Ehrlich, 59 B.R. at 647-48. Additionally, the property was improved with a commercial building occupied by Jack's, a business. Ehrlich, 59 B.R. at 648. Ehrlich was alleged to have secured a mortgage on the property, but, apparently, this did not disturb the financial arrangements under which Goldberg received rents from the property. Ehrlich, 59 B.R. at 648-49. The mortgagee raised two affirmative defenses: first, that it was a bona fide mortgagee and took the mortgage without knowledge of Goldberg's interest in the property, and second, that Goldberg's lack of care and misplaced trust in Ehrlich as his financial advisor had allowed Ehrlich to use the property to secure his mortgage. Ehrlich, 59 B.R. at 649.

In analyzing the claims, the court first noted that Goldberg did not allege that Ehrlich had committed fraud in the execution. The court concluded that, if the mortgagee could demonstrate that it was a bona fide mortgagee for value, then, because the mortgage was voidable only against the persons benefitting from or participating in the fraud, the mortgage would be valid and enforceable. Ehrlich, 59 B.R. at 649.

The court then turned to whether the mortgagee had notice of Goldberg's interest. The court stated that notice could be constructive or actual. As to constructive notice, it could be imputed to the purchaser or mortgagee via record notice or inquiry notice. Ehrlich, 59 B.R. at 650. The court

held that the fact that Goldberg paid taxes on the property did not give the mortgagee record notice, because it was under no duty under Illinois law to check the county tax records or bank records that would have demonstrated Goldberg's interest; it was required to check only the records in the office of the recorder of deeds. Ehrlich, 59 B.R. at 650.

Considering inquiry notice, the court first held that inquiry notice "encompasse[d] all facts that a diligent inquiry would have brought to light," like a physical inspection of the property. Ehrlich, 59 B.R. at 650. The court held that, where a party other than the vendor or mortgagor was in possession of the property, the purchaser or mortgagee had a duty to inquire of the party its tenure and interest in the premises. Ehrlich, 59 B.R. at 650. The court held that the possession of the property by Jack's triggered a duty to investigate only the interest held by Jack's. The possession by Jack's would have aroused no suspicion that Goldberg had an interest, because notice due to possession by an occupant does not extend beyond the rights of the occupant. Ehrlich, 59 B.R. at 650. The court held that the possession by Jack's did not impute to the mortgagee notice of Goldberg's interest in the property. Ehrlich, 59 B.R. at 650.

The reasoning of Ehrlich, in turn, is underpinned by Miller v. Bullington, 381 Ill. 238 (1942), and Burnex Oil Co. v. Floyd, 106 Ill. App. 2d 16 (1969). Miller held:

"One having notice of facts which would put a prudent man on inquiry is chargeable with knowledge of other facts which he might have discovered by diligent inquiry. Whatever is notice enough to excite attention and put the party on his guard is notice of everything to which such inquiry might have led and every unusual circumstance is a ground of suspicion and demands investigation." Miller, 381 Ill. at 243.

Similarly, Burnex Oil held:

"[T]he prospective purchaser is chargeable with knowledge of facts which are inconsistent with the claims of ownership by the record owner. *** [T]he prospective purchaser is not at liberty to ignore such facts. Whatever is sufficient to put a party upon inquiry is notice of all facts which pursuance of such inquiry would have revealed and without such inquiry no one can claim to be an innocent purchaser as against the party claiming an interest in the property supported by such notice." Burnex Oil, 106 Ill. App. 2d at 23-24.

Plaintiff has pointed to no authority, and our research likewise has uncovered no authority, to suggest that the holdings in Ehrlich, Miller, and Burnex Oil do not represent the law in Illinois. We now apply this law to the facts of our case.

While the result in Ehrlich favors the trial court's decision here, the rationale employed in Ehrlich, Miller, and Burnex Oil does not. First, the owner of the subject property here is also the occupant. Thus, the holding in Ehrlich that the mortgagee had inquiry notice of the possession by Jack's (Ehrlich, 59 B.R. at 650) would seem to apply to defendant--the knowledge of defendant's interest in the subject property should have been imputed to plaintiff. See also Miller, 381 Ill. at 243; Burnex Oil, 106 Ill. App. 2d at 23-24. Second, defendant told the appraiser, an agent of plaintiff, that she was the owner of the subject property. Yet she was not the person seeking the mortgage on the property. In other words, her declaration that she was the owner coupled with the fact that a third party was seeking to mortgage her property arguably should have, consistent with the rationale in Ehrlich, Miller, and Burnex Oil, triggered a duty in plaintiff to pin down her tenure and interest in the property. We hold, therefore, that, contrary to plaintiff's contention, Ehrlich supports defendant's position regarding plaintiff's duty to inquire. Because of the irregularity of the transaction initiated

by Biagini, we hold that there is a factual issue sufficient to preclude summary judgment regarding whether plaintiff disregarded a duty to conduct a further inquiry and whether plaintiff can be considered a bona fide mortgagee for value. See Ehrlich, 59 B.R. at 650; see also Miller, 381 Ill. at 243; Burnex Oil, 106 Ill. App. 2d at 23-24. The trial court erred in holding that plaintiff was a bona fide mortgagee for value, and we reverse its grant of summary judgment on this ground.

Plaintiff argues that defendant has waived the issue of whether it was a bona fide mortgagee for value, because she did not file a cross-motion for summary judgment on the issue. In support of this argument, plaintiff cites Sasser v. Alfred Benesch & Co., 216 Ill. App. 3d 445, 452 (1991), for the proposition that "[l]egal issues that do not require consideration of evidence, as in the context of summary judgment proceedings, are waived if not presented in the trial court." While plaintiff correctly cites Sasser, plaintiff's argument fails because defendant's theory of her affirmative defense was that plaintiff was not a bona fide mortgagee for value, and this argument was repeatedly placed before the trial court. Indeed, the trial court, erroneously, resolved the argument in plaintiff's favor. Plaintiff's argument is that defendant was required to file a cross-motion for summary judgment to raise the issue. Plaintiff does not cite any authority in support and none exists. Rather, all defendant was required to do was to oppose plaintiff's motion for summary judgment and raise the issue, as she has done. We note, too, that defendant does not request that we enter summary judgment in her favor--that would have required some sort of cross-motion for summary judgment. Accordingly, we reject plaintiff's argument.

Plaintiff contends that the trial court properly found that there were no genuine issues of material fact. Plaintiff argues that the trial court properly determined that, because credit cards were often paid off at loan closings, the fact that Biagini directed that his credit cards be paid off was

nothing out of the ordinary. The rub to that position, as we have identified above, is that Biagini was procuring a loan on his own behalf on property that defendant told plaintiff's agent she owned. Further, Biagini was receiving the proceeds of the loan, and Biagini was using proceeds from the loan to pay off his own debts, even though defendant represented to the appraiser that she was to receive the mortgage on her property to perform more improvements. Under the circumstances, we disagree with the trial court's comment that plaintiff would have needed to be clairvoyant--rather, plaintiff needed to investigate the claims of property ownership made by defendant and Biagini and look more carefully at the transaction Biagini was engineering. Accordingly, the trial court erred in holding that there is not a factual issue regarding whether the loan documents Biagini submitted and defendant's claims of ownership were sufficient to put plaintiff on notice of a duty to further inquire as to the transaction Biagini was orchestrating. We reject plaintiff's contention.

Plaintiff also contends that defendant's declaration of ownership was consistent with the property being held in a land trust. Plaintiff states that the fact that Biagini did not apply for a mortgage on homestead property is further consistent with the property being held in a land trust, with defendant as beneficial owner and Biagini as trustee. Yet the property appears, from the record, to have been defendant's home and homestead. We believe that evidence demonstrating that a trustee applied for a mortgage on someone else's home (and received all of the proceeds and paid off the trustee's personal debts) raises a factual issue as to whether the conduct is sufficiently out of the norm to raise suspicion and to place on the mortgagee a duty to further inquire. We reject plaintiff's contention.

Plaintiff also argues that Biagini's decision to deed the property to himself at the closing on the mortgage is a run-of-the-mill occurrence in these sorts of transactions such that it should not have

raised any eyebrows. As we have noted, the fact that Biagini would act as trustee to a land trust may not be suspicious. However, the facts that Biagini created a land trust with himself as both beneficiary and trustee, induced the beneficial owner of the subject property to transfer the property to himself as beneficial owner/trustee even though defendant maintained that it was her property, and then obtained a mortgage on the property but paid the proceeds to himself and used the proceeds to retire his personal debts, all considered together, may be suspicious. As a result, there exists an issue sufficient to preclude the grant of summary judgment.

We further find plaintiff's argument to be problematic. Plaintiff seeks to deconstruct the entire transaction into its component parts and then argue that each individual part, standing alone, does not look suspicious. The problem with the argument, however, is that plaintiff should have looked at all of the components of the transaction together. The idea defendant is pursuing is akin to cumulative error. While an individual error standing alone may not be sufficient to support reversal, all of the errors together may require reversal--likewise, each individual part of the mortgage transaction by itself may not be suspicious, but, when added up, the whole transaction may demand further inquiry. Viewing the record as a whole, we do not believe that plaintiff's attempt to break the mortgage transaction into incremental components is proper under the circumstances of the case. Accordingly, we reject plaintiff's contention.

Likewise, plaintiff's argument about defendant's interaction with the appraiser was misplaced. According to plaintiff, defendant consistently represented to the appraiser that she wanted a mortgage placed on the property. If plaintiff credits this representation to the appraiser, then, in order to be logically consistent, plaintiff must have been placed on notice to further investigate when a third party applied for the mortgage and received all of its proceeds, going so far as to use the proceeds

to pay off his personal credit cards. The transaction Biagini structured is not consistent with defendant seeking a mortgage. Yet plaintiff relies on the fact that defendant represented to plaintiff's agent that she wanted a mortgage on her property to make further improvements to it. If plaintiff credits this representation, then it effectively admits that it had a duty to further inquire, because Biagini's transaction was not consistent with defendant's expectations as expressed to plaintiff's agent. Thus, there is an issue that precludes the entry of summary judgment in favor of plaintiff. In attempting to make its point, plaintiff again focuses on a single aspect, the interaction between defendant and the appraiser, but overlooks the logical follow-up.

Plaintiff further notes that, at no time did defendant attempt to stop the mortgage. However, the record demonstrates the existence of the factual question of whether, at any time, defendant was aware of the mortgage. If, as plaintiff attempts to insinuate, defendant was the moving force behind the mortgage, then plaintiff should have investigated when defendant suddenly dropped out of the picture. Moreover, plaintiff attempts to insinuate that defendant schemed to fraudulently procure a mortgage on her property using Biagini's credit information. We believe this too is an issue of fact raised but not settled by the record one way or the other. However, if plaintiff doubted defendant's sincerity and qualifications in undertaking to mortgage the subject property, then it effectively admits that it needed to further investigate the situation, which is, after all, defendant's point. The existence of a factual issue regarding this point precludes the grant of summary judgment.

Plaintiff properly notes that the ruling in Ehrlich is favorable to its position. However, plaintiff does not discuss the rationale for the holding, which is that, under Illinois law, a mortgagee is presumed to have notice of the physical characteristics of the property and its occupants. Ehrlich, 59 B.R. at 650. The record suggests that defendant claimed ownership and was seeking a loan to

improve the subject property. Biagini, not defendant, applied for a loan on the subject property and took the proceeds, using them to settle his personal debts. These circumstances, if fully borne out by all of the evidence, would be sufficiently suspicious to warrant further investigation, per the rule in Ehrlich. The fact that the holding in Ehrlich is favorable to plaintiff's position does not invalidate its rationale or the manner in which it applies to this case.

Plaintiff also notes that defendant referred to Christine Peters as her "roommate." Plaintiff claims this to be odd because, if defendant thought that she owned the property, she would have been more likely to refer to Peters as her tenant or her guest. Plaintiff's contention does not support the grant of summary judgment. We doubt that defendant intended to suggest to the appraiser the existence of a legal relationship between herself and Peters, apart from the fact that Peters was an additional inhabitant of the subject property, thereby explaining her presence at the property during the appraisal.

We have considered the arguments raised by plaintiff in support of the trial court's ruling. We have rejected them and determined that there is a factual issue regarding whether the odd circumstances surrounding Biagini's application for the mortgage on the subject property triggered a duty for plaintiff to inquire further. Accordingly, we hold that the trial court erroneously granted summary judgment in favor of plaintiff on defendant's affirmative defense. Because of our resolution of this issue, we need not consider whether Biagini's fraud constituted fraud in the execution or fraud in the inducement. Accordingly, we reverse the judgment of the circuit court of Du Page County and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.

BYRNE and ZENOFF, JJ., concur.