2024 IL App (1st) 231403-U

No. 1-23-1403

Order filed August 14, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

Third Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| 5201 WASHINGTON INVESTORS LLC and ARTHUR BERTRAND, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 22 CH 1268 |
| EQUITYBUILD, INC.; PP FIN CHICAGO 36 LLC; GREYSTONE SERVICING CORPORATION, INC.; FANNIE MAE; UNKNOWN OCCUPANTS; and NON-RECORD CLAIMANTS, | ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (PP FIN Chicago 36 LLC, and Fannie Mae, Defendants-Appellees). | ) ) ) | Honorable Edward N. Robles, Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice R. Van Tine concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court properly dismissed with prejudice the prior mortgagees' lawsuit to foreclose their mortgage against the subsequent purchaser and mortgagee because they were a *bona fide* purchaser and mortgagee, who acquired their

interests in the property at issue for value without actual or constructive knowledge that the prior mortgage was not properly released.

¶ 2 Plaintiffs 5201 Washington Investors LLC and Arthur Bertrand sued to foreclose their mortgage against all defendants and sought a declaratory judgment that a recorded release of plaintiffs' mortgage was void. Defendants PP FIN Chicago 36 LLC (PP FIN) and Federal National Mortgage Association (Fannie Mae) filed separate motions to dismiss the complaint, arguing that they were protected from plaintiffs' claim as a *bona fide* purchaser and mortgagee, respectively, who acquired their interests in the property at issue for value without actual or constructive knowledge that plaintiffs' prior mortgage was not properly released. Fannie Mae also argued that federal law provided an independent alternative ground supporting Fannie Mae's motion to dismiss.

¶ 3 The circuit court dismissed plaintiffs' claims as to PP FIN and Fannie Mae, with prejudice, finding that they were a *bona fide* purchaser and mortgagee, respectively, and thus took their interests free of plaintiffs' mortgage. The circuit court made no determinations as to Fannie Mae's claims under federal law.

¶ 4 On appeal, plaintiffs argue that PP FIN and Fannie Mae are not a *bona fide* purchaser and mortgagee for value because (1) they had record notice of plaintiffs' prior mortgage, (2) nonparty EquityBuild Finance LLC (EBF) did not have apparent authority to execute a release of the prior mortgage held by plaintiffs, and (3) PP FIN and Fannie Mae were on inquiry notice that EBF lacked authority to execute the challenged release. Plaintiffs also argue that they are entitled to a declaration that the release of their mortgage has no effect.

¶ 5    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 6                                I. BACKGROUND

¶ 7    This court has jurisdiction over this appeal pursuant to Illinois Supreme Court Rule 304(a) (eff. March 8, 2016), as an appeal of a final judgment that does not dispose of an entire proceeding. The case remains pending in the circuit court as to defendants EquityBuild, Inc., the Unknown Owners, and the Non-Record Occupants. This appeal concerns the property commonly known as 5201 W. Washington Boulevard, Chicago, Illinois (the Property) and the interplay of three instruments recorded against it, *i.e.*, (1) plaintiffs' mortgage recorded in 2015, (2) the release of plaintiffs' mortgage recorded by EBF in 2018, and (3) a mortgage recorded in 2019, which Fannie Mae now owns.

¶ 8    In February 2015, plaintiffs and other third parties (the Investors) loaned EquityBuild, Inc. funds to acquire the Property. Plaintiffs and the Investors engaged EBF to service the loan pursuant to a collateral agency and servicing agreement (the Servicing Agreement). Paragraphs 3 and 4(a) of the Servicing Agreement stated that EBF could not take any action with respect to the collateral without written instructions from plaintiffs. The Servicing Agreement was not recorded.

¶ 9    The loan was secured by the Investor Mortgage, which was recorded with the Cook County Recorder of Deeds (Recorder) on March 19, 2015. The cover page of the Investor Mortgage named the Lender as "[t]he Persons Listed on Exhibit A to the Mortgage c/o [EBF]." The first page of the Investor Mortgage defined the "Lender" by stating, "[t]his Security Instrument is given to The

_____

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

Persons Listed on Exhibit A to the Mortgage C/O [EBF] *** ('Lender')" and provided an address in Plano, Texas. The first page of the Investor Mortgage further included a written notation directing the Recorder to mail the Investor Mortgage to EBF after recording. Paragraph 6 of the Investor Mortgage directed all notices to "Lender," defined to include EBF, to go solely to EBF, and paragraph 10 stated "Lender shall release this security Instrument" upon payment. Consistent with the Investor Mortgage, the commercial flat rate promissory note secured by the Investor Mortgage defined the lender as "The persons listed on Exhibit A to this Note C/O [EBF] (hereinafter collectively referred to as the 'Holder' or 'Lender')." (Emphasis in original.)

¶ 10     EquityBuild, Inc. defaulted on its obligations to plaintiffs when it failed to pay the amount due on its promissory note when the note matured on February 1, 2017.

¶ 11     PRE Holdings 2, LLC (PRE Holdings) and PP FIN are two of various affiliated companies operating under the umbrella of Pangea Properties (collectively, the Pangea Companies), which regularly engage in real estate transactions. As part of their regular business practice in acquiring real property, the Pangea Companies relied upon title searches of the public records to identify any encumbrances and obtain any necessary releases to ensure there were no encumbrances on title when the real properties were acquired. If such title searches revealed the existence of an encumbrance, the Pangea Companies required the sellers to clear such encumbrances from title in order to close on the transaction.

¶ 12     On or about November 29, 2017, EquityBuild, Inc. conveyed the Property to PRE Holdings. Prior to the closing of the sale, a title insurance company performed a title search on the Property to identify any encumbrances and issued a title commitment to PRE Holdings for a title

insurance policy. The title search identified the Investor Mortgage and that a release of the Investor Mortgage was required in order to waive the Investor Mortgage as an exception to the title policy to be issued to PRE Holdings. As a condition to closing, on January 2, 2018, EBF executed and caused to be recorded a release deed (the Release) that released the Investor Mortgage. The Release was executed by Shaun P. Cohen acting in his capacity as manager for EBF "as agent for THE PERSONS LISTED ON EXHIBIT A TO THE MORTGAGE." As a result, the title exception for the Investor Mortgage was waived and the title insurance company issued a title policy to PRE Holdings without any exception for the Investor Mortgage.

¶ 13    In February 2019, PRE Holdings conveyed the Property to PP FIN. On March 20, 2019, defendant Greystone Servicing Company LLC, f/k/a Greystone Servicing Corporation, Inc. (Greystone)—predecessor in interest to Fannie Mae—made a loan to PP FIN in the amount of $1,755,000 (the PP FIN Loan), which is evidenced by a multifamily note dated March 20, 2019 (the PP FIN Note). The PP FIN Loan is secured by the PP FIN Mortgage, a first-lien security interest recorded with the Recorder on March 21, 2019. Prior to making the PP FIN Loan, Greystone engaged in certain due diligence as part of its underwriting process. Greystone retained a title company to perform a title search and received verification that title was clear of all prior liens to ensure its first mortgage lien position with respect to the Property. Greystone intended to immediately assign the mortgage to Fannie Mae, as evidenced by Fannie Mae being listed as an insured party in the title policy issued on March 21, 2019.

¶ 14    Within a day after Greystone made the loan, Fannie Mae purchased the PP FIN Note and PP FIN Mortgage from Greystone. Greystone endorsed the PP FIN Note to Fannie Mae and

assigned the PP FIN Mortgage to Fannie Mae pursuant to an assignment of multifamily mortgage, assignment of leases and rents, security agreement and fixture filing. In acquiring the PP FIN Note and PP FIN Mortgage, Fannie Mae relied upon the standard underwriting process of Greystone, its assignor, in accordance with Fannie Mae's requirements, including obtaining a mortgagee title policy insuring its first mortgage lien position. Fannie Mae took its assignment of the PP FIN loan from Greystone in good faith, for value, and without any notice that the recorded Release was allegedly unauthorized or subject to challenge. Fannie Mae paid full value for the assignment, in the amount of $1,755,000, to Greystone. Greystone no longer holds an interest in the property. When Fannie Mae purchased the PP FIN Note and Mortgage and recorded its assignment with the Recorder on March 21, 2019, the Release of the Investor Mortgage remained of record.

¶ 15    On February 15, 2022, plaintiffs sued defendants, seeking to foreclose on the previously released Investor Mortgage. Plaintiffs also sought a declaratory judgment finding that the Release was unauthorized and void and that, as a result, plaintiffs held an enforceable first-priority mortgage on the Property. Plaintiffs alleged that, unknown to them, EquityBuild Inc. and EBF were arms of a Ponzi scheme run by Shaun and Jerome Cohen. The Cohens would sell property they owned through EquityBuild, Inc. with EBF fraudulently releasing those mortgages to enable the Cohens to repay earlier investors and enrich themselves. The Ponzi scheme collapsed and, in August 2018, the United States Securities and Exchange Commission brought suit against the Cohens and their entities in the Northern District of Illinois, case No. 18-cv-5587. The Northern District of Illinois entered judgment against the Cohens and found that they used EquityBuild, Inc.

and EBF as part of a Ponzi scheme. Prior to the collapse of the Ponzi scheme, EquityBuild Inc. had sold the Property in November 2017 to PP FIN's affiliated entity—PRE Holdings.

¶ 16 In June 2022, PP FIN and Fannie Mae filed separate motions to dismiss under section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 2-619(a)(9) (West 2020)). Specifically, PP FIN, as the current owner and mortgagor of the Property, and Fannie Mae, as the current mortgagee of the property, argued that they acquired their respective interests in the Property free and clear of the Investor Mortgage because they were *bona fide* purchasers/mortgagees for value of the Property and had no actual or constructive knowledge that the Release was allegedly improper. Fannie Mae's motion was joint with Greystone, which also had moved to dismiss on the basis that it no longer held an interest in the Property. On this basis, the circuit court in May 2023 dismissed Greystone from this action. Plaintiffs seek no relief against Greystone in this appeal.

¶ 17 Fannie Mae's motion to dismiss also argued that federal law precluded the relief sought by plaintiffs because Fannie Mae was an entity in federal conservatorship. Specifically, Fannie Mae argued that federal law (1) prevents Fannie Mae's lien—which constitutes Federal Housing Finance Agency (FHFA) property—from being subject to foreclosure without FHFA's explicit affirmative consent, and (2) prevents courts from granting any relief that would restrain or affect the exercise of powers or functions of FHFA as a conservator, including by impairing FHFA's statutory powers to collect all obligations and money due Fannie Mae and to preserve and conserve Fannie Mae's assets and property. As Fannie Mae's conservator, FHFA moved for leave to participate in oral argument as *amicus curiae* regarding the federal arguments. The circuit court

denied FHFA's motion to participate in the oral argument, but granted FHFA leave to file an *amicus* brief supporting Fannie Mae's arguments.[2]

¶ 18    Plaintiffs responded that neither PP FIN nor Fannie Mae was a *bona fide* purchaser/mortgagee because plaintiffs' Investor Mortgage was fraudulently released and a simple examination of the chain of title would have revealed that the Release was fraudulent or, at a bare minimum, would have put a reasonably prudent party on notice of significant irregularities that warranted further investigation. According to plaintiffs, PP FIN and Fannie Mae had constructive or at least inquiry notice that the Release was fraudulent. Plaintiffs, however, did not provide any affidavit to counter the averments made by PP FIN, Greystone, and Fannie Mae that they took their interests in the Property in good faith, for value, and with no notice that the recorded Release was allegedly unauthorized or subject to challenge.

¶ 19    After PP FIN's and Fannie Mae's motions to dismiss were fully briefed, oral argument took place in May 2023. On July 14, 2023, the circuit court granted both motions to dismiss with prejudice in a written opinion. The court determined that both PP FIN and Fannie Mae qualified as *bona fide* purchasers or mortgagees, respectively, because they did not have actual or constructive notice, via either record or inquiry notice, of plaintiffs' continued interest in the Property when the PP FIN Mortgage was originated by Greystone or subsequently acquired by Fannie Mae. Specifically, a plain reading of the Investor Mortgage led to the logical conclusion that EBF was the authorized agent for the individuals listed on exhibit A of the Investor Mortgage

---

[2]In March 2024, this court granted FHFA leave to file a brief as *amicus curiae*.

(including plaintiffs), and the Release and public record were consistent with the apparent authority given to EBF on the face of the Investor Mortgage. The court also stated that plaintiffs' argument for declaratory relief failed because neither PP FIN nor Fannie Mae had notice of plaintiffs' interest and no evidence indicated that PP FIN or Fannie Mae participated in the alleged fraudulent conduct. Therefore, whether or not the Release was fraudulent had no effect on PP FIN's or Fannie Mae's status as *bona fide* purchasers/mortgagees for value. The circuit court did not consider Fannie Mae's federal law arguments because it disposed of the case on state law grounds. The court expressly found that there was no just cause to delay enforcement or appeal.

¶ 20    Plaintiffs appealed.

¶ 21                                    II. ANALYSIS

¶ 22    The standard of review of a motion to dismiss under section 2-619 of the Code is *de novo*. *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 569 (2002). Under section 2-619, a party may move to dismiss a claim based on certain defects or defenses. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 485 (1994). "The purpose of a section 2-619 motion is to dispose of issues of law and easily proved issues of fact early in the litigation." *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008); see *Krilich*, 334 Ill. App. 3d at 570.

¶ 23    One ground for involuntary dismissal is an "affirmative matter" outside of the pleadings which admits the legal sufficiency of the plaintiffs' claim but nevertheless defeats the claim. *Czarobski*, 227 Ill. 2d at 369. An "affirmative matter" under section 2-619(a)(9) can be a defense that negates the cause of action completely or refutes crucial conclusions of law or material fact contained in or inferred from the complaint. *Illinois Graphics Co.*, 159 Ill. 2d at 486. The

affirmative matter must either be evident "on the face of the plaintiff's complaint or be supported by affidavit or other evidentiary material." *Nichol v. Stass*, 192 Ill. 2d 233, 247 (2000).

¶ 24                    A. *Bona Fide* Purchaser/Mortgagee Defense

¶ 25    The same protections guaranteed to *bona fide* purchasers of real property and their title interests extend to originators and purchasers of mortgages. See, *e.g.*, *In re Ehrlich*, 59 B.R. 646, 649-50 (Bankr. N.D. Ill. 1986); *Stump v. Swanson Development Co., LLC*, 2014 IL App (3d) 110784, ¶ 101. The *bona fide* purchaser/mortgagee defense protects subsequent innocent purchasers/mortgagees in the chain of title who did not participate in or benefit from fraud. See, *In re Ehrlich*, 59 B.R. at 649; *LaSalle Bank v. Ferone*, 384 Ill. App. 3d 239, 245 (2008); *Stump*, 2014 IL App (3d) 110784, ¶ 122-24. A *bona fide* purchaser or mortgagee must establish that it acquired its interest, *i.e.*, the property or mortgage, for valuable consideration without actual or constructive notice of another's adverse interest in the property. *In re Ehrlich*, 59 B.R. at 650.

¶ 26    Actual notice is knowledge the purchaser/mortgagee had at the time of conveyance, and constructive notice is knowledge that is imputed to the purchaser/mortgagee, whether or not the party actually had the knowledge at the time of conveyance. *Id.* A party may have constructive notice through record notice or inquiry notice. *Id.* "[R]ecord notice imputes to the purchaser knowledge that could be gained from an examination of the grantor-grantee index in the office of the Recorder of Deeds, as well as the probate, circuit, and county court records for the county in which the land is situated." *Id.* Under inquiry notice, "a person will be charged with notice when that person has knowledge of facts or circumstances that would cause a person of prudence to make further inquiry." *Stump*, 2014 IL App (3d) 110784, ¶ 104.

¶ 27                                    1. Record Notice

¶ 28    Plaintiffs argue that the Release is invalid on its face and PP FIN and Fannie Mae, at all times, had record notice of plaintiffs' rights to the Property. Plaintiffs cite section 2 of the Illinois Mortgage Act (Mortgage Act) (765 ILCS 905/2 (West 2020)), which requires that a written release of mortgage must be provided by "[e]very mortgagee of real property, his or her assignee of record, or other legal representative." Further, section 2 clarifies that a mortgage "shall be released of record only in the manner provided herein or as provided in the Mortgage Certificate of Release Act." *Id.* Accordingly, plaintiffs argue that a release can only appear to be valid if it is executed in conformity with that statute. Plaintiffs state that, here, the Release was executed by EBF and not a title company under the Mortgage Certificate of Release Act (Mortgage Release Act) (765 ILCS 935/1 *et seq.* (West 2020)). Moreover, EBF was not one of the 26 individuals or entities listed on exhibit A to the Investor Mortgage and no assignment of the Investor Mortgage to EBF appeared in the record, so the Release, on its face, was executed by someone other than the mortgagees identified in the Investor Mortgage. Plaintiffs add that the Investor Mortgage did not identify EBF as plaintiffs' legal representative, servicer, nominee, or anything similar; rather the Investor Mortgage states only that it is given to the mortgagees c/o EBF, with EBF's address following thereafter. The Investor Mortgage then specifies that EBF can receive notices. Plaintiffs assert that nothing in the limited language of the Investor Mortgage provided any authority to EBF to release a mortgage or otherwise act on plaintiffs' behalf.

¶ 29    Plaintiffs also argue that EBF did not have apparent authority to execute a release of the Investor Mortgage. Plaintiffs cite *Cove Management v. AFLAC Inc.*, 2013 IL App (1st) 120884,

¶ 29, for the propositions that mere evidence of a relationship between a purported agent and a principal does not create apparent authority upon which a third party may reasonably rely, and third parties "dealing with a known agent may not act negligently with regard to the extent of the agent's authority or blindly trust the agent's statements in such respect" (*Id.* ¶ 27). Plaintiffs argue that, here, PP FIN and Fannie Mae made no effort to ascertain the scope of EBF's authority, and the Investor Mortgage's identification of EBF as the party to receive notices on behalf of the mortgagees does not create a reasonable impression that EBF is empowered to act as the general agent of the mortgages. Plaintiffs contend that because the Investor Mortgage did not give EBF authority to release the Investor Mortgage on behalf of the mortgagees (or do anything else except receive notices), PP FIN and Fannie Mae were obligated to ascertain the limits of EBF's authority but failed to do so.

¶ 30     Plaintiffs' reliance on record notice to defeat PP FIN's and Fannie Mae's *bona fide* purchaser/mortgagee defense is unavailing because nothing in the public record could have put PP FIN and Fannie Mae on constructive notice of plaintiffs' interest in the Property. The public record showed that the Release was valid and authorized and the Property was free of the Investor Mortgage. Plaintiffs identify no documents in the public record that contradict the logical conclusion that EBF was the Investors' authorized agent. Instead, plaintiffs attempt to rely on the Investor Mortgage as somehow putting PP FIN and Fannie Mae on record notice of the purportedly fraudulent Release; however, the plain language of the Investor Mortgage indicates that EBF acted as agent for the individuals listed on exhibit A to the Investor Mortgage (including plaintiffs) to execute the Release.

¶ 31    The cover page of the Investor Mortgage names the Lender as "The Persons Listed on Exhibit A to the Mortgage c/o [EBF]." The first page of the Investor Mortgage formally defines the "Lender" as including EBF by stating, "[t]his Security Instrument is given to The Persons Listed on Exhibit A to the Mortgage C/O [EBF] *** ('Lender')." The first page of the Investor Mortgage further includes a written notation directing the recorder to mail the Investor Mortgage to EBF after recording. Each of these parts of the Investor Mortgage signal to the reader that EBF acted as plaintiffs' agent and had apparent authority with respect to the Investor Mortgage. Paragraph 6 of the Investor Mortgage directs all notices to "Lender," defined to include EBF, to go solely to EBF, and paragraph 10 states "Lender shall release this security Instrument" upon payment.

¶ 32    Nothing in the Investor Mortgage contradicts the recorded Release, which plainly stated that EBF signed the Release "as agent for The Persons Listed on Exhibit A to the Mortgage." The Release further stated that "The Persons Listed on Exhibit A to the Mortgage c/o [EBF] *** hereby remise, convey, release and quit-claims *** all rights, title, interest, claim or demand whatsoever he/she may have acquired in, through or by a certain mortgage ***." This language expressly tracks the definition of Lender in the Investor Mortgage and gives no indication to a reasonably prudent subsequent purchaser or mortgagee that EBF, included as the Lender defined under the Investor Mortgage, might not have been authorized to execute a release. The Release, for instance, nowhere referenced or even hinted at the existence of the unrecorded Servicing Agreement. Without any sort of reference to the possible existence of such a document in the public record, a prudent subsequent mortgagee is entitled to rely on the authority of the releasing agent and is not

obligated to make an extra-record investigation. *Brenner v. Neu*, 28 Ill. App. 2d 219, 221-23 (1960); *Marsh v. Stover*, 363 Ill. 490, 494 (1936).

¶ 33    Illinois courts have applied the *bona fide* purchaser doctrine, akin to the *bona fide* mortgagee doctrine, to forged or unauthorized mortgage releases under Illinois law for more than a century. See, *e.g.*, *Lennartz v. Quilty*, 191 Ill. 174 (1901) (unauthorized release of a debt does not discharge the debt as between original parties; but subsequent purchasers, without notice, or anything to put them on inquiry notice, of an adverse lien, may rely on the release and will take priority of title over the original lienholder); see also *Marsh*, 363 Ill. 490; *Brenner*, 28 Ill. App 2d 219; *Bank of New York v. Langman*, 2013 IL App (2d) 120609.

¶ 34    The *Brenner* case is particularly on point. Like plaintiffs, the Brenners sought to foreclose a mortgage they contended was subsequently fraudulently released of record. *Brenner*, 28 Ill. App. 2d at 219-20. The Brenners owned real estate managed for them by J.W. Dungey, the managing officer of the Ed Petri Agency. *Id.* at 220. The property was sold, and the buyers gave a mortgage securing a note back to J.W. Dungey, Trustee. *Id*. Dungey assigned the note and mortgage to the Brenners, but the Brenners failed to record the assignment. *Id.* Dungey then collected the mortgage payments for the Brenners, but ultimately released the mortgage upon a subsequent sale of the property and satisfaction of the mortgage, without paying the Brenners' the mortgage balance. *Id.* at 220-21.

¶ 35    Like plaintiffs here, the Brenners argued that Dungey had no authority to release the mortgage and the release was void, and, therefore, the successor purchaser (Hoffman) was not protected by the release. *Id.* at 221. The court noted, "[t]he Hoffman purchase followed the normal

course of real estate acquisitions in that payment was made of the entire consideration with the aid of the Loan Association proceeds, and the Dungey mortgage release which, of record, showed the premises as free and clear of the mortgage or obligation." *Id.* The court applied the *bona fide* purchaser doctrine in favor of Hoffman because (1) Hoffman was an innocent purchaser for value, (2) Dungey (like EBF here) had "the right to receive payment of the mortgage" and "in absence of any knowledge to the contrary by the successor in title, had the right to release the mortgage," and (3) the Brenners' failure to record the assignment to them of the Dungey mortgage was the cause of the loss as between the innocent parties named. *Id.* at 221-23. Similarly here, plaintiffs designated EBF as their collateral agent and servicer, plaintiffs did not record the Servicing Agreement, which allegedly limited the authority of EBF, and the allegedly unauthorized Release sat in the record for over a year prior to the loan transaction at issue. Any loss caused by the failure to record and EBF's subsequent actions falls on plaintiffs, not innocent purchasers/mortgagees such as PP FIN and Fannie Mae.

¶ 36    On appeal, plaintiffs have raised the new argument that the Release was not executed in conformity with section 2 of the Mortgage Act or the Mortgage Release Act because the Release was executed by EBF instead of a title company or any of the 26 individuals listed on exhibit A to the Investor Mortgage. Arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal. See, *e.g.*, *Bowman v. Chicago Park District*, 2014 IL App (1st) 132122, ¶ 59; *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 500 (1985) ("[i]t is axiomatic that questions not raised in the trial court are deemed waived and may not be raised for the first time on appeal"); *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15.

¶ 37    Regardless, plaintiffs' newly raised argument fails. First, section 2 of the Mortgage Act governs the relationship and requirements between the mortgagor and mortgagee in connection with the Release; it has no impact on Fannie Mae or its predecessors as subsequent *bona fide* mortgagees. The statute creates no standard of care relating to a subsequent mortgagee or cause of action in favor of a prior mortgagor. See 765 ILCS 905/2 (West 2020). Notably, plaintiffs cite no cases showing that an alleged unauthorized release defeats the subsequent claims of a *bona fide* mortgagee based upon the terms of the statute.

¶ 38    Additionally, plaintiffs fail to explain how or why EBF, which on the public record was shown to be plaintiffs' authorized agent, does not qualify as a "legal representative" within the statute's language. Plaintiffs assert EBF could be considered a "legal representative" only if that was stated verbatim by the Investor Mortgage. However, plaintiffs do not point to any statutory definition or case law showing that an agent is not a legal representative under the Mortgage Act. Reference to the dictionary reveals that a legal representative is "an agent having legal status." Merriam- Webster.com Legal Dictionary, Merriam-Webster, https://www.merriam-webster.com/legal/legal%20representative. Accessed 2 Aug. 2024. Similarly, Black's Law Dictionary defines "agent" as "someone who is authorized to act for or in place of another; a representative." Black's Law Dictionary (11th ed. 2019). Courts have also recognized that an agent is necessarily a legal representative. See, *e.g. Grane v. Grane*, 143 Ill. App. 3d 979, 985 (1986) (describing defendant as "agent/legal representative"). Thus, even if the argument was not forfeited and section 2 of the Mortgage Act was applicable as to a subsequent *bona fide* mortgagee,

EBF acting as an agent qualifies as a legal representative within the meaning of the statute, negating any record notice of plaintiffs' adverse interest.

¶ 39                                    2. Inquiry Notice

¶ 40    Plaintiffs argue that even if the Release was not facially invalid, the suspicious nature of the Release executed by EBF is apparent from the public record and thus placed PP FIN and Fannie Mae on inquiry notice of plaintiffs' rights. Specifically, the Investor Mortgage indicated that the borrower/mortgagor was EquityBuild, Inc. and was signed by Jerry Cohen on behalf of that entity. The Release was executed by Shaun Cohen on behalf of EBF. Thus, the Release was executed by a party that, if not identical to the borrower, was an affiliate of the borrower. Plaintiffs argue that the scenario where the borrower's affiliate can release its own mortgage undermines the basic purpose of a mortgage to provide security in real estate for the payment of a debt. Plaintiffs contend that this highly unusual situation should have caused PP FIN and Fannie Mae to think twice before proceeding with their transactions and require proof from EBT that it could execute the Release.

¶ 41    Plaintiffs' position would place upon PP FIN and Fannie Mae and other commercial purchasers/mortgagees a new duty, unsupported by law, to investigate documents and facts not located in the public record when an agent releases a mortgage. However, the precedent regarding the *bona fide* purchaser/mortgagee defense makes clear that PP FIN's and Fannie Mae's duty of inquiry ended with the title search that indicated the Investor Mortgage had been released. See *Stump*, 2014 IL App (3d) 110784, ¶ 119. Furthermore, the plain language of the recorded Release and Investor Mortgage in this case would not cause a prudent person to make any further inquiry regarding the validity of the Release.

¶ 42    A party will be charged with notice of facts that may have been discovered by further investigation when the party knew of facts or circumstances that would cause a prudent person to make further inquiry. *Id.* ¶ 104. However, a subsequent purchaser's and mortgagee's duty to conduct a proper inquiry ends when it obtains a title search and that search does not reveal any recorded documents indicating that the property was not legitimately conveyed. See *id.* ¶ 119. Plaintiffs' argument is contrary to a century of precedent under which Illinois courts have applied the *bona fide* purchaser doctrine, akin to the *bona fide* mortgagee doctrine, to alleged forged or unauthorized mortgage releases without any burdensome requirement that the authority of expressly disclosed agents be investigated beyond what appears in the public record. See, *e.g.*, *Lennartz*, 191 Ill. at 180; *Marsh*, 363 Ill. at 494; *Brenner*, 28 Ill. App. 2d at 221-23; *Bank of New York*, 2013 IL App (2d) 120609, ¶ 18.

¶ 43    Both *Stump* and *Brenner* are particularly analogous and instructive. In both cases, the *bona fide* purchaser/mortgagee defense was applicable because the title search revealed no documents or facts in the public record showing the plaintiffs' interest. See *Stump*, 2014 IL App (3d) 110784, ¶ 123; *Brenner*, 28 Ill. App. 2d at 221-23. Similarly here, plaintiffs failed to record the Servicing Agreement which contained the purported limits of EBF's agency and neither the Investor Mortgage nor the Release refer to or incorporate in any way the Servicing Agreement. Thus, PP FIN, Fannie Mae, and Greystone were not—and could not have been—aware of the Servicing Agreement between plaintiffs and nonparty EBF when they acquired an interest in the Property.

¶ 44    In *Stump*, 2014 IL App (3d) 110784, ¶ 8, a lender made loans to third parties, which were secured by mortgages on real properties. The third parties acquired title to the properties from a

related individual. *Id.* ¶¶ 3-6. Unbeknownst to the lender, the related individual claimed an interest in the properties after he conveyed title to the borrowers. *Id.* ¶ 72. As part of its underwriting process, the lender obtained a title search, which did not reveal any documents or facts evidencing the individual's claimed interest. *Id.* ¶¶ 119-20. The title search showed the individual had no recorded interest in the properties; however, the individual challenged the enforceability of the lender's mortgages and claimed a superior interest in the properties. *Id.* ¶ 72. The court affirmed a holding in favor of the lender, finding that the lender was a *bona fide* mortgagee. *Id.* ¶ 127. The court held that at the time of conveyance, there was "nothing in the title search that should have put the bank on inquiry notice that could lead to the knowledge (or a reasonable suspicion) that the property had not been legitimately conveyed." *Id.* ¶ 119. As a result, "the bank had no obligation to inquire further and its duty ended with its title search." *Id.* ¶ 120. The court emphasized that the individual did not document or record his retained interest in the properties in the chain of title after he conveyed the property (*id.* ¶ 112), and that "[the individual's] title would not appear as current in any search of the chain of title at the time the loans were made" (*id.* ¶ 123). Similarly here, nothing in the record identified or even hinted at either limitations on EBF's power to release upon payment or the existence of the separate unrecorded Servicing Agreement, which plaintiffs argue is the source of such limitations.

¶ 45    The facts of *Stump* closely parallel the present facts. The Pangea Companies obtained a title search as part of its regular business practice in acquiring real property. Moreover, Greystone obtained a title search for the benefit of Fannie Mae as part of its underwriting due diligence. Those searches did not reveal any documents or facts showing the plaintiffs' alleged interest. The Release

remained unchallenged and of record for over a year when PP FIN and Fannie Mae subsequently acquired their interests in the Property. PP FIN's and Fannie Mae's duty to inquire ended with the clean title search.

¶ 46     There are no facts alleged that would cause a reasonable person to make further inquiry into the validity of the Release as it was a notarized document consistent with the terms of the Investor Mortgage. PP FIN's and Fannie Mae's reliance on representations that title was clear and the absence of any further duty of inquiry is well supported. See *id.* ¶ 119; *In re Ehrlich*, 59 B.R. at 650 (finding that mortgagee was entitled to rely on party's authority to execute the mortgage); *Weinstein v. Carrane*, No. 90 C 1190, 1991 WL 247684, at *3 (N.D. Ill. Nov. 6, 1991) (finding that there was no duty of inquiry when all deeds were properly executed and notarized, sufficiently described the property, and were for adequate consideration). Whether or not the Release was valid, PP FIN's and Fannie Mae's reliance on the chain of title, the recorded Release, a "clean" title evidenced by the purchaser/mortgagee title policies, and the absence of clear proof of fraud or bad faith means that PP FIN and Fannie Mae had no constructive notice of plaintiffs' adverse interest.

¶ 47     Plaintiffs attempt to rely on a series of distinguishable agency cases to assert that PP FIN and Fannie Mae had a duty to investigate the limits of EBF's agency outside of available recorded information. However, the *bona fide* purchaser/mortgagee doctrine makes clear that PP FIN's and Fannie Mae's duty ended with a clear title search. Plaintiffs cite apparent authority cases that neither involve a fraudulently released mortgage nor discuss the duty of a *bona fide* purchaser/mortgagee. See *In re Marriage of Stephenson*, 2011 IL App (2d) 101214, ¶ 38 (attorney

did not have apparent authority to consult her husband about divorce case on her client's behalf); *Yugoslav-American Cultural Center, Inc. v. Parkway Bank & Trust Co.*, 289 Ill. App. 3d 728, 737 (1997) (defendants had knowledge of corporate plaintiff's bylaws including required approval for sale of property and could not rely on apparent agency, nor could defendants' wholly owned corporation or its land trustee); *Cove Management*, 2013 IL App (1st) 120884, ¶ 28 (plaintiff relied exclusively on the statements and representations of independent contractor regarding authority to bind defendant AFLAC to lease); *Slape v. Fortner*, 3 Ill. App. 2d 339, 349 (1954) (third person who is dealing with an agent and "has knowledge or notice that the agent's authority [ ] is conferred on him by an instrument in writing" has a duty to inquire into the limits of the authority conferred by the written instrument).

¶ 48 Plaintiffs' cases are also distinguishable because they involve face to face dealings with a purported agent. However, PP FIN and Fannie Mae did not directly or indirectly interact with EBF, which was acting as plaintiffs' agent. Nor did Fannie Mae's predecessor, Greystone. Rather, PP FIN is a *bona fide* purchaser and Fannie Mae is a *bona fide* mortgagee that relied on a facially valid release in a chain of title.

¶ 49 Plaintiffs allege the current case parallels *Cove Management*. However, neither the facts nor the reasoning in *Cove Management* are analogous or applicable to this case. In *Cove Management*, the landlord brought a breach of contract, ratification, and unjust enrichment action against AFLAC to enforce a lease which codefendant Darren Galgano entered into on AFLAC's behalf without authority. *Cove Management*, 2013 IL App (1st) 120884, ¶¶ 1-4. The court found that the landlord "relied exclusively on the statements and representations of Galgano that he had

the authority to bind AFLAC to the lease." *Id.* ¶ 28. Notably, the court pointed out that the majority of evidence the landlord relied on came into existence after the lease was already signed. *Id.* ¶ 26. For example, the landlord attached an exhibit to the complaint showing the address on Galgano's business card was an office with an AFLAC symbol and that AFLAC was listed on the business directory. *Id.* However, because this occurred after the lease was signed, the landlord could not show reliance on agency status at the time the landlord entered into the lease. *Id.*

¶ 50 *Cove Management* does not relate to the release of a mortgage and does not address the limited duty of a *bona fide* mortgagee as elaborated by Illinois courts for over one hundred years in cases like *Lennartz*, *Marsh*, and *Brenner*. Further, in *Cove Management*, the plaintiff attempted to rely on evidence after the transaction to show apparent authority. In contrast, here, PP FIN and Fannie Mae relied on the express and unlimited statements of agency in the Investor Mortgage and Release at the time that they acquired their interests in the Property, not after. Additionally, PP FIN and Fannie Mae did not directly deal face to face with a known agent or rely on oral statements made to them by EBF. Rather, PP FIN purchased the Property and Fannie Mae purchased the PP FIN Note and Mortgage well over a year after the Investor Mortgage was released and only after ensuring that the premises were free and clear of any adverse interest of record.

¶ 51 Plaintiffs argue that the Investor Mortgage and Release were "highly unusual" and should have caused PP FIN and Fannie Mae to "think twice." However, as discussed above, both the Investor Mortgage and Release expressly provided that EBF was the Investors' authorized agent and in their recorded state contained no limitations on that disclosed agent's authority or reference to the unrecorded Servicing Agreement. The duty of a prudent and honest *bona fide* purchaser or

mortgagee to make further extra record inquiry can only be triggered by circumstances that are so clear, an inference of bad faith misconduct by a predecessor is a necessary conclusion. *Cessna v. Hulce*, 322 Ill. 589, 597 (1926). "Mere suspicion will not establish an inference of fraudulent intent." *Id.* PP FIN and Fannie Mae justifiably relied on those recorded documents and the issued title policies when they acquired their interests in the Property. The title searches showed no other existing lien affecting the Property. Plaintiffs' argument regarding PP FIN's and Fannie Mae's purported duty to investigate beyond what has been recorded would require purchasers and mortgagees, after receiving a clear title search, to nonetheless carry out the burdensome process of hunting for documents not in the public record to confirm the results of the search. Avoiding such unnecessary burden is precisely the point of the title search itself, which ensures that no alleged adverse interest in the property exists. Notably, plaintiffs' argument would essentially require prudent subsequent purchasers and mortgagees to presume agent relationships always raise red flags when it was plaintiffs themselves who signed the unrecorded documents establishing that relationship.

¶ 52    We conclude that nothing in the public record would have put PP FIN or Fannie Mae (or Greystone) on constructive notice of plaintiffs' continued interest in the Property. The plain language of the Investor Mortgage and the Release indicates that EBF acted as a duly disclosed legal representative and agent for the individuals listed on exhibit A to the Investor Mortgage (including plaintiffs) and the Release and public record were consistent with the apparent authority given to EBF on the face of the Investor Mortgage. Because the Servicing Agreement was not recorded, and neither the Release nor the Investor Mortgage referred to or incorporated the

Servicing Agreement, PP FIN and Fannie Mae could not have been aware of the Servicing Agreement's terms when they acquired their interests as the subsequent owner and mortgagee of the Property. Furthermore, PP FIN and Fannie Mae did not have inquiry notice because neither the Release nor the Investor Mortgage would cause a prudent person to make any further inquiry regarding the validity of the Release or would have caused PP FIN or Fannie Mae to doubt the validity of the title searches that found that the Investor Mortgage had been expressly released of record.

¶ 53                                    B. Declaratory Relief

¶ 54    Plaintiffs argue they still have an enforceable mortgage even if Fannie Mae's mortgage is senior to the Investor Mortgage because plaintiffs would still be entitled to a declaration that the Release is of no effect and they hold a valid mortgage on the Property and could proceed with foreclosure as a junior lienholder.

¶ 55    As stated by the circuit court, even if plaintiffs were entitled to a declaration that the Release was fraudulent, such a determination would not bind PP FIN or Fannie Mae. Under Illinois law, if PP FIN is a *bona fide* purchaser or Fannie Mae is a *bona fide* mortgagee, the PP FIN Mortgage is superior to the plaintiffs' interest regardless of whether the Release was unauthorized. See *Stump*, 2014 IL App (3d) 110784, ¶¶ 122-23. A mortgage is voidable only against the persons participating or benefiting from fraud, but it is valid and enforceable as to a party who is an innocent purchaser for value. See *In re Ehrlich*, 59 B.R. at 649; *LaSalle Bank*, 384 Ill. App. 3d at 245. Plaintiffs do not and cannot allege that PP FIN and Fannie Mae participated in or benefited from the alleged fraudulent release. In *Stump*, the court held that even though the defendants

perpetrated fraud, the lender's mortgage took "priority over any ownership interest of the [p]laintiffs." *Stump*, 2014 IL App (3d) 110784, ¶ 122. Similarly, because PP FIN and Fannie Mae are a *bona fide* purchaser/mortgagee who acquired their interests in the Property for value without notice of any alleged fraud, and who did not participate or benefit from said alleged fraud, their interests are superior to plaintiffs' interest regardless of the validity of the Release. See *id.* ¶¶ 122-23. A judgment declaring the Release fraudulent would have no effect on a *bona fide* purchaser/mortgagee and for that reason, dismissal of plaintiffs' count seeking declaratory relief as to PP FIN and Fannie Mae was appropriate and is affirmed.

¶ 56                                C. Federal Law

¶ 57    This court does not consider Fannie Mae's federal law arguments because we decided this case on state law grounds.

¶ 58                                III. CONCLUSION

¶ 59    The circuit court correctly found that PP FIN and Fannie Mae are a *bona fide* purchaser and mortgagee, respectively, who took their interest in the Property for value without any actual or constructive notice of plaintiffs' interest. As a result, the circuit court properly dismissed plaintiffs' complaint against PP FIN and Fannie Mae.

¶ 60    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 61    Affirmed.